OPINION
{¶ 1} This is an appeal by defendant-appellant, Reginald A. Cooke ("appellant"), from an order of the Franklin County Court of Common Pleas, Division of Domestic Relations finding him to be in civil contempt of an agreed decree and judgment entry entered February 11, 2004, granting a divorce to plaintiff-appellee, Joanna Williamson ("appellee"), from appellant on the grounds of incapatbility and making her sole residential parent and legal custodian of the parties' minor child, granting specified parenting time to appellant in accordance with Loc.R. 27 of the trial court as modified by the decree, and ordering child support to be paid by appellant.
 {¶ 2} After entry of the agreed judgment and decree of divorce, the difficulties and litigation of the parties continued. This appeal involves only the judgment entered August 4, 2005, finding appellant to be in civil contempt as contended in motions filed by appellee on March 1, July 30, and December 27, 2004, and denying a motion filed by appellant on March 19, 2004, seeking an order finding appellee to be in contempt.
 {¶ 3} By the motion filed March 1, 2004, appellee contended that appellant failed to abide by the agreed judgment and decree of divorce referring to the "Memorandum in Support Below" as stating the grounds for the motion. However, the memorandum in support states only that "plaintiff's submits her affidavit in support of this motion below" and a lengthy affidavit is attached.
 {¶ 4} The motion of July 30, 2004 and the Memorandum in Support are almost identical to those filed March 1, 2004, but the affidavit in support is different alleging that appellant failed to reimburse appellee $234.34 alleged to be appellant's share of the cost of the Columbus Speech and Hearing for the parties' minor child.
 {¶ 5} The December 27, 2004 motion and memorandum in support are similar to those earlier motions. The affidavit in support alleges that appellant "has consistently refused to reimburse me [appellee] for his half share of Joseph's expenses for Columbus Speech and Hearing and for tutoring without legal action and alleges that there is $325 due for Columbus Speech and Hearing and $1,182.10 for tutoring. Appellee also alleges in the affidavit that appellant "is denying" her opportunities to talk with the child, Joseph, by telephone by stating that their son did not return her calls and excused his failure to do so by saying that his father had said that his [father's cell] phone was not charged. Appellee also alleged that "this pattern" repeated itself on several occasions.
 {¶ 6} The decree awarded the appellant parenting time with their child, Joseph, from 6 p.m. Friday until 6 p.m. Sunday and every Tuesday from 5 p.m. to 8 p.m. Prior to December 2003, appellee decided to change Joseph's after school therapy sessions from Thursday to Tuesday to accommodate the therapist's schedule to insure that Joseph would remain with that therapist. Appellee stated that appellant "agreed" to the change in schedule but appellant apparently only conditionally agreed to a change to Tuesday so long as his total mid-week parenting time remained the same as before, a total of 3 hours, commencing after the end of the therapy session. This required a change in the starting time to 5:30 p.m. to 8:30 p.m. because the Tuesday therapy sessions did not end until 5:30 p.m. The decree specified a three hour time between 5 p.m. and 8 p.m. on Tuesday but did not specifically specify the number hours of parenting time except to state that it commenced at 5 p.m. and ended at 8 p.m. Later, (about the first of the year) appellee insisted that appellant's mid-week parenting time cease at 8 p.m. (as stated in the decree), but would start at 5:30 p.m. rather than 5 p.m. as stated in the decree. Appellee justified this in part because transferring Joseph any later than 8 p.m. would interfere with his school night bedtime and that appellant could make up the half-hour by going to the therapy session and watching it through a one-way window.
 {¶ 7} Another incident involved appellant taking Joseph to a church concert which did not end until after the 6:30 pick-up time. Appellant went outside the church and called appellee on a cell phone explaining the situation and asked whether he should leave the concert early or if appellee would prefer to pick the child up at the church after the concert. Appellee indicated to appellant that she preferred to follow the court decree. Appellant went back inside the church turned off his cell phone but left the concert early so that he could be at his apartment in time for appellee to pick up Joseph there. Appellee's version was slightly different, she stated that she received a message from appellant about the concert and tried to call him back but could not reach him because his cell phone was turned off. She therefore went to the church at the time specified and waited outside until everyone had left and then went inside the church and could not find Joseph nor appellant there. She then went outside and called appellant on his cell phone. Appellant told her he was at his apartment with Joseph waiting for her to pick up the child. She then went to the apartment and picked up Joseph but later than the specified time because she had gone to the church first.
 {¶ 8} Appellant also filed a motion for contempt predicated upon an incident occurring after appellee made an allegation that appellant's older son (from a prior marriage) had molested Joseph on one weekend. Appellee told appellant that she would not release Joseph to him for the court ordered weekend visitation. Appellant called the police and went to her house to pick up Joseph. Appellee still refused. Appellee had filed a complaint about alleged abuse and although the decree had specified that there will be joint visitation for appellant's two sons there was an emergency order that ceased the joint visitation at least during the period that the matter was being reviewed. Appellant presented evidence that the matter was reviewed and the matter was concluded without further orders, apparently on the basis that appellant and his older son denied the allegations. Although appellant's older son would not have been at his residence during the weekend parenting time, had Joseph been there, appellee refused upon the grounds that appellant might talk to Joseph about the alleged incident contending that it might upset Joseph. After appellee had filed contempt motions against him, appellant filed a contempt motion against appellee for this incident because she had refused to permit the court order parenting time to appellant for that weekend.
 {¶ 9} In support of his appeal, appellant raises six assignments of error:
 FIRST ASSIGNMENT OF ERROR:
 THE COURT COMMITTED ERROR IN RULING THAT APPELLANT WAS IN CONTEMPT FOR BEING UNCOOPERATIVE REGARDING PICK UP AND DELIVERY OF THE MINOR CHILD ON DATES SPECIFIED IN APPELLEE'S MARCH 1, 2004 MOTION FOR CONTEMPT.
 SECOND ASSIGNMENT OF ERROR:
 THE COURT COMMITTED ERROR IN RULING IN FAVOR OF APPELLEE'S JULY 30 MOTION FOR CONTEMPT BY ORDERING THAT APPELLANT'S DELAY IN REIMBURSING APPELLEE $234.34 FOR HIS SHARE OF THE EDUCATIONAL EXPENSE FOR THE PARTIES' MINOR CHILD WAS UNREASONABLE.
 THIRD ASSIGNMENT OF ERROR:
 THE COURT COMMITTED ERROR BY HOLDING APPELLEE IN CONTEMPT FOR FAILURE TO REIMBURSE HER $1,507.10 FOR EDUCATIONAL EXPENSES FOR THE PARTIES' MINOR CHILD.
 FOURTH ASSIGNMENT OF ERROR:
 THE COURT COMMITTED ERROR IN RULING IN FAVOR OF APPELLEE'S DECEMBER 27, 2004 MOTION FOR CONTEMPT AGAINST APPELLANT THAT HE DENIED APPELLEE TELEPHONE COMMUNICATION WITH THE PARTIES' MINOR CHILD ON SEPTEMBER 18, 2004 SIMPLY BECAUSE HE FAILED TO RETURN A CALL TO APPELLEE LEFT ON HIS ANSWER MACHINE.
 FIFTH ASSIGNMENT OF ERROR:
 THE COURT COMMITTED ERROR IN DENYING APPELLANT'S MARCH 19, 2004 MOTION FOR CONTEMPT AGAINST APPELLEE BY HOLDING THAT HER ACT OF DENYING APPELLANT COMPANIONSHIP TIME WITH THE PARTIES' MINOR CHILD WAS REASONABLE WHEN THERE WAS NO CLEAR AND CONVINCING EVIDENCE IN THE RECORD TO JUSTIFY THE DENIAL.
 SIXTH ASSIGNMENT OF ERROR:
 THE COURT COMMITTED ERROR IN DENYING APPELLANT'S MARCH 19, 2004 MOTION FOR CONTEMPT AGAINST APPELLEE BY HOLDING THAT APPELLANT WAS REQUIRED PICK UP THE CHILD WITHIN A HALF AN HOUR WHEN APPELLEE PREVIOUSLY COMMUNICATED TO APPELLANT THAT SHE WOULD NOT RELEASE THE MINOR CHILD TO HIM.
 {¶ 10} Prior to discussion of the six assignments of error, it is appropriate to review the nature of this matter and the issues and standard of review involved. The parties agree that this is a case of civil contempt not criminal contempt. Both parties in their brief refer to the standard of proof in civil contempt cases (clear and convincing evidence) rather than the standard of proof in criminal cases (beyond reasonable doubt).
 {¶ 11} The purpose of sanctions, including punishment, is not for the purpose of punishment, but rather for the purpose of encouraging or coercing a party in violation of the decree to comply with the violated provision of the decree for the benefit of the other party. Pugh v.Pugh (1984), 15 Ohio St.3d 136, 139. See, also, State v. Kilbane (1980),61 Ohio St.2d 201, 204, 205, 15 Ohio St.3d 221, 233, 406 N.E.2d 286, 290
and State ex rel. Corn v. Russo, 90 Ohio St.3d 551, 553, 740 N.E.2d 265,269. Moreover a sanction for civil contempt must allow the contemptnor the opportunity to purge himself of the contempt prior to imposition of any punishment. O'Brien v. O'Brien, Delaware App. No. 2003CA12069,2004-Ohio-581. Berkett v. Miller (1997), 123 Ohio App.2d 550, 552. As the parties both point out an abuse of discretion standard of review applies to both discretionary and factual determinations in a civil contempt appeal.
 {¶ 12} We shall first consider the issues raised by the second and third assignments of error. The second assignment of error pertains to appellant's failure to make timely payment of $234.34 as his share of certain educational expense. Both of these were obligations of appellant to reimburse appellee for certain expenses for the minor child pursuant to the decree. The evidence establishes that appellant was dilatory in making such payments even though he tried to justify his failure to make timely payment. However, appellee concedes that appellant did make both payments in full after institution of the contempt proceedings by her but only shortly before the first hearing on her contempt motion conducted by the trial court. In general, courts in civil matters determine the issues as they exist on the day that evidence is produced. If a given matter has been resolved, even though untimely, ordinarily there is nothing to litigate. Since the purpose of civil contempt to enforce an order to pay money is to urge or compel the offending payment to make the payment of the money, when such payment is made the issues become moot. Even when payment has not been made prior to hearing, the court even when making a finding of civil contempt, must first offer the offender an opportunity to purge him or herself of the contempt prior to imposing any sanctions. In short, where a party who has failed to comply to a court order to pay money to another party and a motion for civil contempt is filed, but the offending party after such filing makes such payment and fully complies with the present requirement to pay money, there is no order for the trial court to make in a civil contempt proceedings since the offending party has purged him or herself of the contempt charge. See Natl. Equity Title Agency, Inc. v. Rivera,147 Ohio App.3d 246, 2001-Ohio-7095, holding that any civil contempt proceedings where compliance of the court order have become moot sanctions are no longer appropriate. Cf. State ex rel. Wilson-Simmons v. Lake CitySheriff's Dept. (1998), 82 Ohio St.3d 37, and State ex rel. Penningtonv. Gundler (1996), 75 Ohio St.2d 171.
 {¶ 13} Appellee, stated several times during her testimony that appellant had brought the payments current after the filing of the motion for contempt and shortly before the first hearing on her motion. This being the case, the civil contempt proceeding became moot insofar as sanctions were concerned other than the possibility of imposing attorney fees incurred by appellee up to the time of compliance by appellant because of his failure to make timely payment until after appellee had instituted proceedings to compel appellant to make the payments he had not made in a timely fashion. The Supreme Court of Ohio has held that in cases of mandamus, where compliance with a clear legal duty occurs only after the bringing of the mandamus action, attorney fees may be assessed against the party making the untimely compliant which are incurred by the other party in bringing the action to compel performance. See State ex rel. Wilson-Simmons and State ex rel.Pennington, supra. Whether similar action is appropriate in this case (a civil contempt) is a matter for initial determination by the trial court upon remand.
 {¶ 14} The first assignment of error involves the controversy created because the change of the day for the minor child's therapy sessions at the speech and hearing clinic from Thursday to Tuesday. Although Loc.R. 27 of the trial court provides that the midweek parenting time shall be on a Wednesday, the parties apparently agreed and it was inserted in the court decree that appellant's mid-week parenting time should be on Tuesday between 5 p.m. and 8 p.m. This apparently worked until appellee's decision to change the speech and hearing therapy from Thursday to Tuesday because of the therapist's schedule and to assure that the child remain with the same therapist even though apparently other times were available with different therapists. There was no discussion and/or effort to change the time of the mid-week parenting time of appellant to another day such as Wednesday as prescribed in Loc.R. 27 or on Thursday, the previous day for the speech and hearing therapy. If therapy session was on Tuesday, appellant's parenting time could no longer commence at 5 p.m. because the therapy session did not end until 5:30 p.m. During the summer and early fall months, the parties worked out the problem by commencing the parenting time at 6 p.m and ending at 9 p.m. This schedule from 5:30 to 8:30 p.m. apparently continued from the time of the change of the therapy date until January 2004, except when it was from 6 p.m. to 8 p.m. At this time, appellee began insisting that appellant's mid-week parenting time be decreased from three hours to two and one-half hours mainly from 5:30 p.m. to 8 p.m. Appellant, on the other hand, was apparently uncooperative, and made little if any effort to have Joseph ready for pick up by appellee before 8:30 p.m. To compound the problem, appellee made no call to appellant's phone until she arrived at his apartment, and invariably spoke to Joseph, the child, rather than to appellant, and would tell the child that she was outside waiting for him. What transpired between the child and appellant after the phone call was unclear, the only real evidence being appellee's testimony as to the excuse Joseph gave her when he finally came out of appellant's residence to her car. The child at that time was nine years old and a special needs child. The rules of evidence provide that the child does not become competent to be a witness until he is ten years old, although he may be a witness at an earlier age after inquiry by the court. In this case, the child did not testify. Rather, the only evidence was the paraphrase by appellee of what the child told her after he got into her car. There was also her testimony that appellant told her at one time that the child would not be ready until 8:30, three hours after the commencement of the parenting time at 5:30 p.m.
 {¶ 15} The decree expressly provides that there shall be a mid-week parenting time for appellant with the parties' minor child from 5 to 8 p.m. every Tuesday. Appellee was insisting upon going by the decree as to the ending time for appellant's mid-week parenting time, but not to go by the decree as to the starting time, namely 5 p.m. Appellant's solution was to add the missing half hour at the end of the parenting time. Appellee's solution was to ignore the half hour and to shorten appellant's parenting time to two and one-half hours rather than three hours as it would be if the decree was strictly followed. Unfortunately, the parties never could agree upon this change of parenting time. Appellee contended that she changed from the prior agreement of the parties because appellant indicated in January that he wanted to strictly follow the court decree with respect to the mid-week parenting time. Strictly following the court order would have made the mid-week visiting time begin at 5 p.m. and end at 8 p.m. This was not possible because the therapy session did not end until 5:30 p.m. Unfortunately, the parties did not seek a determination by the trial court what to do under this difficult situation. There is nothing in Loc.R. 27 or the decree that resolves this problem. It is provided in Loc.R. 27 that the parties should work together to make any modifications of the requirements of Loc.R. 27 prior to the entry of the decree. Presumably this is for the purpose of incorporating in the decree any changes upon which the parties have agreed. Although it is customary and not inappropriate for the parties to make agreements during some of the provisions of the decree or Loc.R. 27, to do so requires the agreement of both parties. Here it is clear that the parties never reached agreement with respect to appellant's midweek visiting time. Neither Loc.R. 27 nor the court decree can anticipate all of the difficulties or differences that may be encountered by the parties during the course of caring for their minor child. It is incumbent upon the parents to use reason and common sense and to work in cooperation for the best interest of their child in solving differences between them with respect to that minor child. If they cannot do so they should apply to the trial court to resolve the differences and set forth a reasonable solution for them, or seek mediation type assistance in resolving their differences. This is a general teaching of Loc.R. 27 which begins with the statement "this schedule is merely a guideline for parenting time. It is the parties responsibility to tailor this schedule as necessary to meet the best interest of their children and their situation before the schedule becomes a court order." Although Loc.R. 27 anticipates that these differences will be worked out prior to the entry of the decree, those which have not been so worked out, are still subject to the admonition of Loc.R. 27, that it is the parties responsibility to work together to meet the best interest of the child and their situation.
 {¶ 16} In addition, Loc.R. 27 provides that "parenting time between the children and non-residential parent shall take place at such times and places as the parties may agree but will not be less than: * * * 2.Weekdays: One week day evening per week from 5 p.m. to 8 p.m. which shall be Wednesday unless otherwise agreed." The decree changes the day of the mid-week visitation from Wednesday to Tuesday. Otherwise Loc.R. 27 remains in effect. Under this rule, the number of hours become important because that is the quantitative time which cannot be diminished without agreement of the parties. Accordingly, appellant's complaint about one-half hour being taken from his mid-week visitation time had merit. In light of this provision of Loc.R. 27, the trial court did abuse its discretion in finding appellant in contempt with respect to the mid-week visitations.
 {¶ 17} With respect to the Sunday night concert incident, there is evidence from which the trial court might conclude that appellant "set up" appellee so that she would end up being late in picking up the minor child after the conclusion of the concert. Appellant testified that he made a telephone call to appellee and told her of the situation and she indicated that she preferred to abide by the decree which provided that she should pick up appellant's child at his residence at 6 p.m. Appellant testified that as a result he and the child left the concert early and went to the apartment arriving there only shortly after 6 p.m.
 {¶ 18} Appellee, however, after receiving what she described as a message from appellant went to the church to pick up Joseph at the end of the concert. She waited until everyone left the church and then went inside looking for appellant and Joseph and called appellant on his cell phone only after she could not find him in the church and went back to her car. Appellee then learned that they were at appellant's residence waiting for her to pick up Joseph. This may have been a "dirty" trick and abusiveness on the part of appellant by tricking appellee into picking up Joseph late. However, appellee has not pointed to any provision in the decree which was violated by appellant much less any remedial action that could be taken to enforce the decree in a civil contempt proceeding. There was simply no evidence indicating that appellant violated the court decree in any manner with respect to this incident even if his conduct was improper and inappropriate. Accordingly, the first assignment of error is well-taken.
 {¶ 19} In the fourth assignment of error, appellant contends that the trial court erred in finding him in contempt for failing to provide telephone contact between appellee and their minor child on September 18, 2004. On that date, appellee testified that she called and left a message for Joseph to call her back and he never did. She testified that she did not know whether or not appellant or Joseph got that message. She also testified that appellant's pattern was to regularly check his cell phone messages. Appellee admitted that she could not say for sure whether or not he received the particular message in question. Appellant apparently did not recall this particular message but testified that the date in question was his birthday and that he did not recall where he had been or what he was doing. In short, there is little evidence of any violation of the court's decree with respect to the telephone call on September 18. In addition, being a civil contempt proceeding which would call only for civil sanctions to enforce the prior court order, it is difficult to conceive of any action that appellant could take to purge himself of the alleged contempt because the child, Joseph, did not return appellee's message on that date. In short, there was insufficient evidence to permit a reasonable finding that appellant was in contempt in this respect. The fourth assignment of error is well-taken.
 {¶ 20} The fifth and six assignments of error relates to appellee refusing to permit appellant's court ordered parenting time on March 19, 2004. The trial court found that appellee acted reasonably in failing to follow the mandate of the decree on that date and that appellant was more than an half-hour late in arriving to pick up the parties' child.
 {¶ 21} Although the evidence seems to indicate that appellee violated the court order by denying appellant's weekend visitation with Joseph (the minor child) on March 19, 2004, by refusing to allow appellant his weekend parenting time, we find no abuse of discretion on the part of the trial court. First, since this is a civil contempt proceeding, there does not appear to be a remedial remedy that would be appropriate nor a ready means for appellee to purge herself of contempt, a prerequisite in cases of civil contempt.
 {¶ 22} Furthermore, appellant was more than 30 minutes late in arriving to pick up Joseph on that date. The fact he may have been "tricked" into being late makes no difference. Appellant first called appellee and she unequivocally told him that she would not permit appellant to have parenting time on that weekend because appellant might talk to Joseph about the alleged incident involving appellant's son by a prior marriage. Appellant then called the police and went with them to appellee's home hoping for them to assist him in convincing appellee in following the court decree with regard to appellant's parenting time on that date. Although the police talked to her, she still refused.
 {¶ 23} There are no exceptions in either the decree or Loc.R. 27 giving one parent the right to deny the other parent parenting time under the circumstances. Additionally, there had been sufficient time for appellee to have obtained a court order, if justified, with respect to the matter.
 {¶ 24} However, Loc.R. 27, ¶ 11, provides that "[I]f the non-residential parent has not arrived to pick up the children within the 30 minute period, parenting time is forfeited and shall not be made up." It provides for no exceptions. Since appellant was more than 30 minutes late, the trial court did not err nor abuse its discretion in finding appellee not to be in civil contempt for denying appellant his weekend parenting time on this one occasion.
 {¶ 25} For the foregoing reasons, appellant's assignments of error one, two, three, and four are sustained and assignments of error five and sixth are overruled and this cause is remanded to the trial court for such further proceedings as may be appropriate.
Judgment reversed in part; affirmed in part and cause remanded.
PETREE and TRAVIS, JJ., concur.
 WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.