[Cite as *Grundey v. Grundey*, 2014-Ohio-91.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Joseph W. Grundey, | : | |
| Plaintiff-Appellant, | : | No. 13AP-224 |
| v. | : | (C.P.C. No. 10DR-02-631) |
| Christine L. Grundey, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on January 14, 2014

*Elizabeth N. Gaba*, for appellant.

*Isaac Wiles Burkholder & Teetor, LLC, Danielle M. Skestos, Christopher J. Geer*, and *Dale D. Cook*, for appellee.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

CONNOR, J.

{¶ 1} Plaintiff-appellant, Joseph W. Grundey ("plaintiff"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, finding him in contempt of court. Because the trial court did not abuse its discretion in holding plaintiff in contempt or in awarding defendant-appellee, Christine Grundey ("defendant"), reasonable attorney fees, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Plaintiff and defendant were married on September 23, 2000 in Maui, Hawaii; two children were born as issue of the marriage. The parties have resided in Ohio throughout their marriage. Plaintiff is a business owner and holds an ownership

interest in the following five businesses: 3Js Drive Thru LLC (5 percent); Luck of the Irish, Inc. (50 percent); Shamrock Entertainment, Inc. (100 percent); Irish Enterprises, Inc. (100 percent); and Pay-Max 258 Inc. (100 percent).

{¶ 3} Plaintiff filed a complaint for divorce on February 18, 2010. Defendant filed an answer and counterclaim for divorce on February 19, 2010.

{¶ 4} On February 2, 2012, defendant filed a Civ.R. 34 request for production of documents. Among other items, defendant requested that plaintiff produce "2011 year-to-date (December 31, 2011) financial statements, including balance sheets and income statements, for each entity in which Joseph W. Grundey has an ownership interest." (Second Request for Production of Documents, exhibit A.)

{¶ 5} Defendant filed a Civ.R. 37 motion to compel discovery on April 9, 2012. Defendant noted in the motion to compel that plaintiff had failed to produce the requested documents by the applicable deadline. The court scheduled the matter for a hearing before a magistrate.

{¶ 6} On June 28, 2012, the parties appeared before the magistrate and entered into an agreed order which the magistrate approved. Pursuant to the parties' agreement, the magistrate sustained defendant's motion to compel, and entered the following order: "Plaintiff to produce QuickBooks for 2011 and year to date by diskette with all necessary passwords by July 13, 2012. If [Plaintiff] fails to produce, then Defendant shall file a Motion in Contempt." (June 28, 2012 Magistrate's Order.)

{¶ 7} Defendant filed a motion for contempt on July 16, 2012, noting that plaintiff had failed to produce the QuickBooks by July 13, 2012. In addition to asking the court to find plaintiff in contempt, defendant also requested that the court award defendant reasonable attorney fees. Defendant requested $2,500 in fees. The court found the contempt motion well-taken, and ordered that plaintiff appear before the court on August 24, 2012 and show cause why he should not be punished for contempt.

{¶ 8} At the August 24, 2012 show cause hearing, plaintiff testified and explained that the financial records for all of his businesses were contained in the QuickBooks computer program. Plaintiff admitted that he was solely responsible for inputting the financial information into the QuickBooks program. Plaintiff further admitted that he had signed the magistrate's June 28, 2012 order, and had failed to

produce the QuickBooks by the July 13, 2012 date. Plaintiff indicated that he did deliver the QuickBooks to defendant via email on August 23, 2012, the day before the show cause hearing.

{¶ 9} Plaintiff explained that he failed to timely produce the QuickBooks because they were "not ready yet." (Tr. 8.) Plaintiff explained that although he entered the financial information for his businesses daily, the raw data contained in the QuickBooks would not "mean anything until the accountant looks at them and cleans them up." (Tr. 9.) As of the hearing, plaintiff stated that the QuickBooks were "about 70 percent done," as the "[f]irst two companies [were] done pretty much," but the accountant still had to look at the other companies. (Tr. 8.) Plaintiff admitted that he had not delivered the QuickBooks to his accountant for her to review until August 1, 2012. Plaintiff explained that he had hoped the case would settle before he had to produce the QuickBooks, but that defendant had rejected plaintiff's settlement offer in late July.

{¶ 10} On September 1, 2012, the magistrate issued a decision, finding plaintiff in contempt of court for his violation of the June 28, 2012 order. The magistrate sentenced plaintiff to three days in the Franklin County Correctional Institution, suspended on plaintiff's compliance with the following conditions: (1) that plaintiff "provide all additional information requested by Defendant's counsel within ten days of said request (particularly additional information related to the 2011 Quick Books – assuming they have already been provided)," and (2) that plaintiff "pay $2,000.00 in attorney fees to Defendant's counsel within[] thirty (30) days of the adoption of this Decision by the Judge." (Sept. 1, 2012 Magistrate's Order, 3-4.)

{¶ 11} Plaintiff filed objections to the magistrate's decision on September 17, 2012. Defendant filed a memorandum in opposition to plaintiff's objections on November 9, 2012, and plaintiff filed a reply to defendant's memorandum contra on November 17, 2012. Plaintiff asserted that equitable estoppel precluded the finding of contempt. Plaintiff contended that defendant's attorney told plaintiff to work on producing a settlement offer before plaintiff produced the QuickBooks by the July 13, 2012 deadline, and that plaintiff had relied to his detriment on defendant's counsel's

oral representation. Plaintiff also asserted that the defense of production and the defense of reasonableness should preclude the finding of contempt.

{¶ 12} On February 13, 2013, the court issued a decision and entry sustaining in part and overruling in part plaintiff's objections to the magistrate's decision. The court found that clear and convincing evidence supported the magistrate's finding that plaintiff had disobeyed the June 28, 2012 order. Regarding plaintiff's asserted defense of equitable estoppel, the court noted that "[d]espite Plaintiff's assertions that he relied on statements of opposing counsel regarding focusing on settlement negotiations rather than producing the QuickBooks as ordered, such reliance was not reasonable nor did it obviate Plaintiff's duty to timely comply with the Court's Order." (Feb. 13, 2013 Decision and Entry, 5-6.) The court noted that reliance on settlement negotiations was not a legally sufficient basis to disobey a court order, and thus was not a valid defense to the finding of contempt.

{¶ 13} The court adopted the magistrate's finding of contempt and the suspended three-day jail sentence, but found the first part of the magistrate's purge order unclear. Accordingly, the court modified the first part of the purge order to read as follows: "Plaintiff to produce Quickbooks for 2011 and year to date by diskette with all necessary passwords within seven (7) days of the filing of this Judgment Entry." (Feb. 13, 2013 Decision and Entry, 7.) The court also addressed the attorney fees provision, noting plaintiff's contention that defendant had failed to present any evidence to support the $2,000 fee award. The court concluded that such evidence was unnecessary, as a domestic relations court may make a fee award even in the absence of supporting evidence when the amount of work and time spent on a case is apparent. The trial court found the $2,000 fee award reasonable and appropriate, and affirmed the second part of the magistrate's purge order.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Plaintiff appeals, assigning the following errors:

> I. The trial Court abused its discretion and erred to the prejudice of Appellant by finding Appellant in contempt of court. The evidence was insufficient to support the finding that the Appellant was in contempt, and the finding was against the manifest weight of the evidence.

II. The trial Court abused its discretion and erred to the prejudice of Appellant by ordering Appellant to pay Defendant's counsel $2,000 in attorney fees.

## III. FIRST ASSIGNMENT OF ERROR—CONTEMPT

{¶ 15} Plaintiff's first assignment of error asserts that the trial court's finding of contempt was against the manifest weight of the evidence. Specifically, plaintiff asserts that the defenses of equitable estoppel, production, and reasonableness bar the court's finding of contempt.

{¶ 16} "Contempt results when a party before a court disregards or disobeys an order or command of judicial authority." *Byron v. Byron,* 10th Dist. No. 03AP-819, 2004-Ohio-2143, ¶ 11, citing *First Bank of Marietta v. Mascrete, Inc.,* 125 Ohio App.3d 257, 263 (4th Dist.1998). "A prima facie case of contempt is established when the order is before the court along with proof of the contemnor's failure to comply with it." *DeMarco v. DeMarco*, 10th Dist. No. 09AP-405, 2010-Ohio-445, ¶ 25, citing *Dzina v. Dzina*, 8th Dist. No. 83148, 2004-Ohio-4497. Contempt of court may also involve an act or omission substantially disrupting the judicial process in a particular case. *Byron* at ¶ 11, citing *In re Davis,* 77 Ohio App.3d 257, 273 (2d Dist.1991). Absent an abuse of discretion, a reviewing court will not overturn a finding of contempt. *Rife v. Rife,* 10th Dist. No. 11AP-427, 2012-Ohio-949, ¶ 9, citing *Hopson v. Hopson,* 10th Dist. No. 04AP-1349, 2005-Ohio-6468, ¶ 9.

{¶ 17} Generally, contempt proceedings in domestic relations matters are civil in nature as their purpose is to encourage compliance with the court's orders. *Byron* at ¶ 12. A sanction for civil contempt must allow the contemnor the opportunity to purge himself or herself of contempt since "[t]he purpose of sanctions, including punishment, is not for the purpose of punishment, but rather for the purpose of encouraging or coercing a party in violation of the decree to comply with the violated provision of the decree for the benefit of the other party." *Williamson v. Cooke,* 10th Dist. No. 05AP-936, 2007-Ohio-493, ¶ 11, citing *Pugh v. Pugh,* 15 Ohio St.3d 136, 139 (1984). " 'The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as so ordered.' " *Sansom v. Sansom*, 10th Dist. No. 05AP-645, 2006-Ohio-3909, ¶ 24, quoting *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250 (1980).

{¶ 18} "[I]n a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party has violated an order of the court." *Hopson* at ¶ 19, citing *Allen v. Allen,* 10th Dist. No. 02AP-768, 2003-Ohio-954, ¶ 16.  Once the movant has met his or her burden, the burden shifts to the other party to either rebut the showing of contempt or demonstrate an affirmative defense by a preponderance of the evidence.  *Id.*, citing *Allen* at ¶ 16, citing *Pugh* at 140.

{¶ 19} Defendant presented clear and convincing evidence that plaintiff violated the magistrate's June 28, 2012 order by failing to produce the QuickBooks by the July 13, 2012 deadline.  Accordingly, defendant established a prima facie case of contempt, and the burden shifted to plaintiff to establish an affirmative defense by a preponderance of the evidence.

{¶ 20} We are mindful that " '[a]n appeal from a contempt charge is moot when a defendant has made payment or otherwise purged the contempt.' "  *Bank One Trust Co., N.A. v. Scherer*, 10th Dist. No. 06AP-70, 2006-Ohio-5097, ¶ 9, quoting *Farley v. Farley*, 10th Dist. No. 02AP-1046, 2003-Ohio-3185, ¶ 62.  *See also Nagel v. Nagel*, 9th Dist. No. 09CA009704, 2010-Ohio-3942, ¶ 28; *Bellamy v. Bellamy*, 4th Dist. No. 10CA45, 2012-Ohio-2780, ¶ 8.  "Such a holding stems from the general rule that satisfaction of a judgment strips a party of the right to appeal." *Bank One Trust Co.* at ¶ 9.  Because an appellate court must decide only actual controversies, "it may not decide contempt appeals once the contemnor has purged the contempt." *Id.*, citing *Caron v. Manfresca*, 10th Dist. No. 98AP-1399 (Sept. 23, 1999).  *See also McRea v. McRae*, 1st Dist. No. C-110743, 2012-Ohio-2463, ¶ 7 (noting that when "the contemnor uses the keys by complying with the trial court's instructions for purging contempt, an appeal from the contempt charge is rendered moot").  *Compare Columbus v. Cicero*, 10th Dist. No. 12AP-407, 2013-Ohio-3010, ¶ 13.

{¶ 21} The trial court's contempt sanction sentenced plaintiff to three days in jail, suspended on plaintiff's compliance with the purge order obligating him to (1) produce the QuickBooks for 2011 and year-to-date within seven days of the judgment entry, and (2) pay $2,000 in attorney fees to defendant's counsel within 30 days of the judgment entry.  The record reveals that plaintiff has complied with the first part of the purge order.  At the August 24, 2012 hearing, plaintiff indicated that he had produced the

QuickBooks on August 23, 2012.  On September 5, 2012, defendant's attorney informed plaintiff's attorney via letter that defendant's accountant was unable to print items off the QuickBooks program.  Plaintiff's attorney responded on September 6, 2012, stating that plaintiff had "repaired the computer glitch regarding the QuickBooks," such that defendant's accountant should be able to print.   (Plaintiff's Reply to Defendant's Memorandum Contra Plaintiff's Objections, exhibit No. 9.)   On January 11, 2013, plaintiff filed a document with the court titled "Plaintiff's Notice of Submission and Delivery of QuickBooks Documents to Defendant." In the notice, plaintiff indicated that he had produced the QuickBooks in three different formats, and had thus complied with his duty to produce the QuickBooks.

{¶ 22} Although plaintiff has purged the contempt with respect to production of the QuickBooks, he has not complied with the second part of the purge order which obligates him to pay $2,000 in attorney fees to defendant's counsel.  Accordingly, any ruling on the propriety of the first part of the purge order would be superfluous, as plaintiff has already produced the QuickBooks.  The appeal, however, is not moot because plaintiff has yet to satisfy the second purge condition, regarding the payment of attorney fees.  *Compare Epitropoulos v. Epitropoulos*, 10th Dist. No. 10AP-877, 2011-Ohio-3701, ¶ 39-40; *Williams* at ¶ 13.

{¶ 23} Plaintiff asserts that the defense of equitable estoppel precludes enforcement of the contempt order.  Plaintiff asserts that defense counsel told plaintiff to concentrate on settling the case before complying with the magistrate's order to produce the QuickBooks by July 13, 2012.  Plaintiff contends that he relied on this factual representation to his detriment as he drafted a 13-page settlement memorandum during the period when the QuickBooks were due, and defendant then rejected that settlement offer and filed the motion for contempt.

{¶ 24} Equitable estoppel arises from a misrepresentation of fact and prevents recovery " 'when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.' "  *Doe v. Archdiocese of Cincinnati,* 116 Ohio St.3d 538, 2008-Ohio-67, ¶ 7, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.,* 71 Ohio St.3d 26, 34 (1994).  "A prima facie case of equitable estoppel requires proof of (1) a factual representation that,

(2) is misleading, (3) induces actual reliance that is reasonable and in good faith, and (4) causes detriment to the relying party." *Hudson v. Petrosurance, Inc.,* 10th Dist. No. 08AP-1030, 2009-Ohio-4307, ¶ 38, citing *Ruch v. Ohio Dept. of Transp.,* 10th Dist. No. 03AP-1070, 2004-Ohio-6714, ¶ 14.

{¶ 25} The evidence in the record does not support plaintiff's contention that defense counsel told plaintiff to forgo complying with the magistrate's order in order to focus on settling the case. Plaintiff testified that defense counsel said "let's settle" during the June 28, 2012 meeting, "put a number on the table," and said, "you know, don't worry about the Coughlin thing, that will go away. Nobody checks those anyway." (Tr. 9.) Plaintiff's reference to the "Coughlin thing" is a reference to a restraining order the court had imposed against Albert Coughlin, Jr., plaintiff's business associate. The order restrained Coughlin from loaning any further money to plaintiff or plaintiff's business entities, and restrained Coughlin from attempting to collect any money from plaintiff. Thus, while defense counsel may have indicated to plaintiff not to worry about the Coughlin restraining order, there is no indication that defense counsel told plaintiff to disregard the order to produce the QuickBooks by July 13, 2012.

{¶ 26} Plaintiff contends that the following exchange between himself and his attorney during direct examination demonstrates that defendant's attorney told plaintiff to forgo complying with the July 13, 2012 deadline in order to focus on settlement:

> Q. And you agreed to produce the QuickBooks, correct?
>
> A. Yes.
>
> Q. The day of that hearing [on June 28, 2012], were we pulled aside regarding settling the case?
>
> A. Yes.
>
> Q. Have there been discussions regarding settling the case?
>
> A. Yes.
>
> Q. Including up to and after the date for production of these QuickBooks?

A.    Yes.

Q.    And, in fact, you sent a settlement proposal through me to your wife's attorney; is that correct?

A.    Yes.

Q.    And after some period of days, that was rejected; is that correct?

A.    Yes.

Q.    Is it also correct that the proposal - - without going into the content of the proposal - - was very similar to a proposal that had been accepted before I got on the case?

A.    Yes.

Q.    Was it your understanding that there was a probability that this case would close out without this QuickBooks issue?

A.    Yes. I figured they wanted a little bit more than what they wanted [to settle the case] in January.

Q.    When that was rejected, did you contact your brother again regarding the QuickBooks?

A.    I said, [l]ooks like we have to get ready to get this stuff done, yes.

(Tr. 18-19.)

{¶ 27} The record does indicate that plaintiff's counsel emailed a settlement offer to defendant's counsel on July 26, 2012, and that defense counsel responded to the settlement offer on July 27, 2012. In the July 27, 2012 response, defense counsel rejected plaintiff's settlement offer, proposed a counter offer, and further indicated that "[e]xcept as set forth above, we will not settle this matter until Mr. Grundey has produced what he has been ordered to produce. We have not yet received: Quick-Books for 2011 and year-to-date." (Plaintiff's Reply to Defendant's Memorandum Contra Plaintiff's Objections, exhibit No. 4.) Thus, while the record indicates that the parties were involved in settlement discussions, and that plaintiff believed or hoped that the

case would settle before he had to produce the QuickBooks, there is no indication that defense counsel actually made a factual representation to plaintiff that plaintiff should ignore the July 13, 2012 deadline in the June 28, 2012 order.

{¶ 28} Moreover, even if the record contained the alleged factual representation, any reliance by plaintiff on such representation would not have been reasonable. The parties could not agree between themselves to nullify the magistrate's order. Plaintiff could have moved the court to extend the July 13, 2012 production date, but he did not. Plaintiff had a legal obligation to produce the QuickBooks by July 13, 2012, pursuant to the magistrate's order, regardless of any conversation plaintiff had with defense counsel. Accordingly, as the record does not reveal a factual representation or reasonable reliance, plaintiff failed to establish the defense of equitable estoppel.

{¶ 29} Plaintiff next asserts that the defense of production precludes the finding of contempt. Plaintiff asserts that because he produced the QuickBooks on August 23, 2012, he could not be held in contempt of court. Plaintiff, however, ignores the fact that he knowingly failed to comply with the magistrate's order to produce the QuickBooks by July 13, 2012. Plaintiff produced the QuickBooks after defendant had filed the motion for contempt and only one day before the hearing on the motion. In such a situation, where the contemnor "complied with the necessary orders *after the filing of the motion for contempt, but prior to the hearing*, the trial court [does] not abuse its discretion in requiring appellant [to] pay appellee attorney fees and sanctions in order to purge himself of contempt." (Emphasis sic.) *Bagnola v. Bagnola*, 5th Dist. No. 2004CA00151, 2004-Ohio-7286, ¶ 40. Accordingly, because plaintiff violated the magistrate's June 28, 2012 order, the trial court properly found plaintiff in contempt of court and imposed the attorney fees payment as a sanction. *See also Williamson* at ¶ 13.

{¶ 30} Plaintiff next asserts that the defense of reasonableness should preclude the contempt finding. Plaintiff asserts that he has a "complete defense to the short delay of 3 weeks in getting the QuickBooks records together," as he was the only individual who could compile all the information for the five businesses. (Appellant's brief, 17.) Plaintiff also notes that, if his accountant did not review the information before he produced the QuickBooks to defendant, defendant would receive "a massive data dump of raw data which probably is not very useful." (Appellant's brief, 17.)

{¶ 31} Plaintiff's asserted excuses are not reasonable. Plaintiff signed the June 28, 2012 order, and knew he had only a short time in which to comply with the July 13, 2012 deadline. The record reveals that instead of attempting to comply with the order, plaintiff went on vacation, and only "[s]ome time late in July when [he] got back from vacation" did he take the QuickBooks to his accountant for her to review them. (Tr. 13.) Although plaintiff notes that he did not want to give defendant a raw data dump, the magistrate's order was not contingent on the quality or accuracy of the data contained within the QuickBooks. The order also was not conditioned on who plaintiff had to help him prepare the QuickBooks. The order simply required plaintiff to produce the QuickBooks by a specified date, which plaintiff failed to do.

{¶ 32} Based on the foregoing, plaintiff's first assignment of error is overruled.

## IV. SECOND ASSIGNMENT OF ERROR—ATTORNEY FEES

{¶ 33} Plaintiff's second assignment of error asserts the trial court abused its discretion by ordering plaintiff to pay defendant's counsel $2,000 in attorney fees, as defendant did not present evidence regarding the amount of work done on the motion or the reasonableness of the fees charged.

{¶ 34} A trial court has discretion to include reasonable attorney fees as part of costs taxable to a defendant found guilty of civil contempt. *State ex rel. Fraternal Order of Police Captain John C. Post Lodge No. 44 v. Dayton*, 49 Ohio St.2d 219 (1977), syllabus. Thus, we review a court's decision to award fees for abuse of discretion. *Id.* at 229.

{¶ 35} Generally, the party seeking an award of attorney fees bears the burden of proof to establish the reasonableness of the fees requested. *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, ¶ 44 (10th Dist.) However, "[a] trial court may evaluate the work performed by an attorney in a domestic-relations action," and may "use its own knowledge and experience to determine the reasonableness of the amount claimed." *Id.*, citing *Ward v. Ward*, 10th Dist. No. 85AP-61 (June 18, 1985). *See also Tonti v. Tonti*, 10th Dist. No. 03AP-494, 2004-Ohio-2529, ¶ 111 (noting that "this court has held that a trial court may award attorney fees in a domestic relations case in the absence of supporting evidence when the amount of work and time spent on the case is apparent"); *Wilder v. Wilder*, 10th Dist. No. 94APE12-1810 (Sept. 7, 1995), citing *Babka*

*v. Babka*, 83 Ohio App.3d 428 (9th Dist.1992); *Pace v. Pace*, 5th Dist. No. 10 AP 02 0008, 2010-Ohio-3573, ¶ 44, citing *Labriola v. Labriola*, 5th Dist. No. 2001CA00081 (Nov. 5, 2001) (stating that "[i]n contempt actions in domestic relations cases, a trial court may award attorney fees in the absence of supporting evidence when the amount of work and time spent on such a case is apparent").

{¶ 36} Based on the foregoing authority, defendant was not obligated to establish the reasonableness of her attorney fees if the amount of work and time spent on the matter was apparent from the record. The trial court, in affirming the magistrate's $2,000 fee award, noted that the magistrate had "knowledge of the significant experience possessed by counsel, and [was] further knowledgeable of the attorney fees and expenses associated with similar litigation in the Franklin County Domestic Court." (Feb. 13, 2013 Decision and Entry, 8.) Accordingly, "based upon the time expended including motion, preparation and trial time," the trial court found the $2,000 fee award "reasonable and appropriate." (Feb. 13, 2013 Decision and Entry, 8.)

{¶ 37} The court relied on its own knowledge and experience to determine that the $2,000 fee award was reasonable, as it was entitled to do. As such, we find no abuse of discretion in the $2,000 fee award.

{¶ 38} Based on the foregoing, plaintiff's second assignment of error is overruled.

## V. DISPOSITION

{¶ 39} Having overruled plaintiff's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

TYACK and KLATT, JJ., concur.

_____