[Cite as *Wells Fargo Bank, N.A., v. Odita*, 2014-Ohio-2540.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Wells Fargo Bank, N.A., etc., | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-663 |
| v. | : | (C.P.C. No. 2010 CVE-05-7254) |
| E. Okechukwu Odita et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on June 12, 2014

*Benesch, Friedlander, Coplan & Aronoff LLP, Ronald L. House, Jr.* and *J. Allen Jones, III*, for appellee.

*Doucet & Associates, Inc.*, *Troy J. Doucet* and *Daniel A. Yarmesch*, for appellants E. Okechukwu Odita and Florence Odita.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendants-appellants, E. Okechukwu Odita and Florence Odita ("appellants"), appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Wells Fargo Bank, N.A. ("appellee"), on its complaint for foreclosure, approving the sale of the property at issue by the court-appointed receiver, and awarding certain attorney fees sought by appellee. For the following reasons, we affirm.

{¶ 2} The action giving rise to this appeal involves property located at 21-39 South Burgess Avenue, Columbus, Ohio, which consists of multiple buildings containing a total of 16 residential units ("the Property"). In June 2005, Paul and Kathleen Pearson ("the

Pearsons") executed a promissory note for $445,000 ("the Note") to New Century Mortgage Corporation ("New Century"). To secure payment of the note, the Pearsons executed a mortgage ("the Mortgage") to New Century on the Property. Appellee asserts that it took the Note for value in 2005. Appellee further asserts that New Century assigned the mortgage to appellee in 2005. On June 10, 2008, appellants entered into a consent and assumption agreement with the Pearsons, under which appellants assumed all obligations under the Note and the Mortgage.

{¶ 3} In May 2010, appellee filed a complaint for foreclosure, asserting that appellants were in default of the terms and conditions of the Note. Appellee sought judgment against appellants for the outstanding balance due and accrued interest under the Note, along with foreclosure of the Mortgage and sale of the Property. Appellee subsequently amended its complaint to assert that appellants engaged in fraudulent conveyances of certain other rental properties they owned to limited liability companies under their control in an attempt to hinder appellee's ability to recover from them ("the fraudulent conveyance claim").

{¶ 4} Appellee also sought the appointment of a receiver to manage the Property. The trial court granted appellee's motion for appointment of a receiver, granting the receiver authority to manage, control, operate, maintain, and protect the Property, as well as authority to sell the Property. In July 2011, the receiver filed a motion requesting an order authorizing sale of the Property free and clear of any liens, claims, encumbrances or interests of the parties for $147,833. Following a hearing, the trial court issued an order granting the receiver's motion and approving the sale.

{¶ 5} On November 9, 2011, the trial court granted summary judgment in favor of appellee on its claims for judgment on the Note and foreclosure of the Mortgage. After conducting a bench trial, on May 9, 2013, the trial court ruled in appellee's favor on the fraudulent conveyance claim, concluding that the transfers of appellants' other rental properties to limited liability companies were sham transactions performed with the intent of avoiding obligations to appellants' creditors. The trial court also awarded appellees attorney fees incurred in pursuing the fraudulent conveyance claim. After taking evidence from the parties and conducting a hearing, on July 1, 2013, the trial court issued

a judgment against appellants for $94,018.79 in attorney fees on the fraudulent conveyance claim.

{¶ 6}   Appellants appeal from the trial court's judgment, assigning three errors for this court's review:

> 1. The trial court erred when it granted Wells Fargo summary judgment on Counts I-IV of the Amended Complaint ("the Foreclosure Claims").
>
> 2. The trial court erred when it permitted the receivership to sell the Burgess Avenue Property free and clear of all liens and encumbrances for $147,833.00.
>
> 3. The trial court erred when it awarded Wells Fargo its attorney's fees in the amount of $94,018.79.

{¶ 7}   In their first assignment of error, appellants assert that the trial court erred by granting summary judgment in favor of appellee on the claims seeking judgment on the Note and foreclosure of the Mortgage. Appellants argue that appellee failed to demonstrate that it had standing to enforce the Note and the Mortgage at the time it filed the complaint.

{¶ 8}   We review a trial court's ruling on a summary judgment motion de novo. *Capella III, L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "De novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Citations omitted.) *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate where "the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Capella III* at ¶ 16, citing *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6.

{¶ 9}   A party seeking summary judgment in a foreclosure action must demonstrate that it was entitled to enforce the note and had an interest in the mortgage on the date the complaint in foreclosure was filed. *See Fed. Home Loan Mtge. Corp. v.*

*Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 28 ("[B]ecause [Federal Home Loan] failed to establish an interest in the note or mortgage at the time it filed suit, it had no standing to invoke the jurisdiction of the common pleas court."); *Bank of New York Mellon v. Watkins*, 10th Dist. No. 11AP-539, 2012-Ohio-4410, ¶ 18 ("An entity must prove that it was the holder of the note and mortgage on the date that the complaint in foreclosure was filed, otherwise summary judgment is inappropriate."); *see also Nationstar Mtge., L.L.C. v. Van Cott*, 6th Dist. No. L-12-1002, 2012-Ohio-5807, ¶ 19 (concluding that a party seeking foreclosure was not entitled to summary judgment because there was a genuine issue of material fact as to whether it owned the note or was otherwise entitled to enforce the note at the time the foreclosure complaint was filed). Appellants argue that appellee failed to demonstrate it had possession of the Note at the time it filed the complaint and, therefore, failed to establish its status as holder of the Note. Although a party must prove that it had standing when the foreclosure complaint was filed, such proof may be provided after the filing of the complaint. *Watkins* at ¶ 18 ("[A] mortgagee can offer proof after the filing of the foreclosure action to establish that the mortgage was assigned to the mortgagee prior to or at the time of the filing of the foreclosure action."). *See also Deutsche Bank Natl. Trust Co. v Najar*, 8th Dist. No. 98502, 2013-Ohio-1657, ¶ 57 ("[A] plaintiff can offer additional proof after the filing of the foreclosure action, including with its motion for summary judgment, establishing that it became the holder of the note and mortgage prior to or at the time of the filing of the foreclosure action.").

{¶ 10} In this case, appellee attached with its complaint a copy of the Note executed by the Pearsons in favor of New Century on May 13, 2005. This copy of the Note contained a blank indorsement, signed by an employee of New Century. The blank indorsement had the effect of making the Note payable to the bearer. R.C. 1303.25(B). Because the Note was indorsed in blank, appellee may establish that it was the holder by proving that it was possession of the Note at the time it filed the complaint. *See* R.C. 1303.201(B)(21)(a). *See also Bank of Am., N.A. v. Pasqualone*, 10th Dist. No. 13AP-87, 2013-Ohio-5795, ¶ 33 (concluding that the appellee was the holder of the note because it was in possession of a promissory note containing a blank indorsement). In addition to the copy of the Note attached to the complaint, we find further evidence in the record

demonstrating that appellee was the holder of the Note at the time it filed the complaint. On May 21, 2010, approximately eight days after filing the complaint, appellee filed an affidavit to address issues raised by the trial court at the hearing on the motion for appointment of a receiver. The affidavit was made by Ryan Lucas ("Lucas"), who attested that he was an asset manager with Midland Loan Services, Inc., which was the master and special servicer for appellee. Lucas further attested that "[a] copy of the Note contained in my files is attached to the Complaint as Exhibit A." (Lucas affidavit, 2.)[1] Based on this evidence, we conclude that appellee established it had possession of the Note when the complaint was filed in May 2010.

{¶ 11} Appellants argue further that appellee failed to establish its standing because the plain language of the Note prohibited its transfer by indorsement in blank. The relevant clause of the Note provided that the Pearsons agreed to pay New Century, "or order" the amount specified in the Note. Without citing any statutory or common law authority, appellants appear to claim that the use of the term "or order" prohibited the Note from being transferred by blank indorsement. We note generally that an instrument payable to order is payable to the identified person. R.C. 1303.10(C). The law provides that an instrument payable to an identified person may become payable to bearer if it is indorsed in blank. R.C. 1303.10(D). Furthermore, the "or order" language in the Note is general and nowhere does the clause restrict the transfer from an instrument payable to order to one payable to bearer. Absent any supporting authority, we are not convinced by appellants' argument that the language of the Note prohibited transfer through blank indorsement.

{¶ 12} With respect to the Mortgage, appellants claim that appellee lacks standing because the assignment from New Century to appellee was executed after New Century had transferred its interest in the Note and Mortgage to another entity. However, assuming for purposes of analysis that appellants are correct, we conclude that appellee

---

[1] We note that, in support of its motion for summary judgment, appellee relied on a second affidavit from Lucas, made in August 2010, which referred to a copy of the Note as contained in his files as an exhibit to the affidavit, not as an exhibit to the complaint. However, there is no evidence that any party contested the accuracy of Lucas's May 2010 affidavit and, therefore, we rely on it as further evidence that appellee had possession of the Note when it filed the complaint.

had standing to enforce the Mortgage when the complaint was filed. This court has previously held that negotiation of a note secured by a mortgage operates as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered. *Pasqualone* at ¶ 39, citing *U.S. Bank Natl. Assn. v. Gray*, 10th Dist. No. 12AP-953, 2013-Ohio-3340, ¶ 32. "In other words, '[t]he physical transfer of the note endorsed in blank, which the mortgage secures, constitutes an equitable assignment of the mortgage, regardless of whether the mortgage is actually (or validly) assigned or delivered.' " *Gray* at ¶ 32, quoting *Najar* at ¶ 65. As explained above, the evidence demonstrates that appellee, through its special servicer, had possession of the Note, bearing a blank indorsement from New Century, when the complaint was filed. The transfer of the Note from New Century to appellee constituted an equitable assignment of the Mortgage. *See Gray* at ¶ 34; *Pasqualone* at ¶ 40. Therefore, appellee had standing to enforce the Mortgage when it filed the complaint.

{¶ 13} Accordingly, we overrule appellants' first assignment of error.

{¶ 14} Appellants' second assignment of error asserts that the trial court erred by allowing the receiver to sell the Property. Appellants argue that the trial court abused its discretion by allowing the receiver to sell the Property for a fraction of the amount appellants owed on the Note.

{¶ 15} A court may appoint a receiver in a mortgage foreclosure case "when it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and the property is probably insufficient to discharge the mortgage debt." R.C. 2735.01(B). Once appointed, a receiver's powers include the ability to take and keep possession of the property, make transfers, and perform other acts respecting the property authorized by the court. R.C. 2735.04. The Supreme Court of Ohio has held that R.C. 2735.04 enables a trial court to exercise its discretion to limit or expand a receiver's powers as it deems appropriate. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 74 (1991). "Absent a showing that the trial court has abused that discretion, a reviewing court will not disturb the trial court's judgment." *Id.* An abuse of discretion occurs where a trial court's decision is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} Appellants argue that the approved sale price of $147,833 was significantly lower than the value of the Property and the amount they owed on the Note. They assert that the existing balance on the loan exceeded $400,000, when they assumed the Note and the Mortgage in 2008. Further, they claim that the Property was appraised at a value of $880,000 in August 2008. Appellants also refer to a 2011 property tax valuation from the county auditor of $417,600. Based on these appraisals, appellants argue that the receiver mismanaged the Property and that appellee simply wished to dispose of the Property as quickly as possible. Appellants argue that, under these circumstances, the trial court abused its discretion by approving the sale of the Property.

{¶ 17} In support of the motion to approve the sale, the receiver outlined the steps taken with respect to marketing and selling the Property. Shortly after being appointed in May 2010, the receiver retained a third-party residential management company to assist in stabilizing and correcting problems with the Property. That company provided an estimate of $41,000 in deferred maintenance and other improvements to make the Property habitable. A witness for the receiver testified that, when the receiver took over the Property, 13 of the 16 units were occupied, but 10 of the tenants were delinquent in rent payments by a month or more. The receiver attempted to have the delinquent tenants catch up on their rent but ultimately proceeded with eviction actions. Based on the condition of the Property and the maintenance required, the receiver decided to secure and hold the units, rather than trying to obtain new tenants.

{¶ 18} The receiver also obtained multiple opinions from real estate brokers regarding the value of the Property. These value opinions ranged from $6,000 to $15,625 per unit, for a total "as-is" sale price range of $96,000 to $250,000. In support of the motion to approve the sale, the receiver indicated that he listed the Property for sale in September 2010 at a price of $250,000. After several showings, three purchase offers ranging from $80,000 to $100,000 were received in January 2011. The receiver entered into negotiations with two potential buyers, which ultimately resulted in two final offers in April 2011: one offer of $141,600 and a competing offer of $147,833. The receiver argued that, given the Property's location, occupancy rate, and deferred maintenance, the latter offer was commercially reasonable.

{¶ 19} The trial court admitted that the proposed sale price was far below the ideal price but concluded that, under the circumstances, it was fair and reasonable. The trial court further concluded that the 2011 appraisal value was not an appropriate reference point because it did not reflect the present condition of the Property. Testimony presented to the trial court suggested that the $880,000 appraisal was based on selling the units as condominiums for $55,000 each and that such a price was inconsistent with the location and present condition of the Property. The receiver presented ample evidence and testimony demonstrating the deteriorating condition of the Property, as well as the relative lack of interest from prospective buyers. Under these circumstances, we conclude that the trial court did not abuse its discretion by approving the receiver's request to sell the Property. *See, e.g., Fifth Third Bank v. Q.W.V. Properties, LLC*, 12th Dist. No. CA2010-09-245, 2011-Ohio-4341, ¶ 44-45 (trial court did not abuse discretion in approving sale where receiver acted to procure the highest possible sale price and preserve the remaining value of the property).

{¶ 20} Accordingly, we overrule appellants' second assignment of error.

{¶ 21} In their third assignment of error, appellants argue that the trial court erred by granting appellant the full amount of attorney fees it sought related to the fraudulent conveyance claim. Appellants assert that appellee failed to prove that the attorney fees it sought were reasonable.

{¶ 22} We review an award of attorney fees for abuse of discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). Moreover, the Supreme Court of Ohio has held that, "[u]nless the amount of [attorney] fees is so high or so low as to shock the conscience, an appellate court will not interfere." *Id.*

{¶ 23} When ruling on a request for attorney fees, the trial court must first determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, also referred to as the "lodestar" figure. *Sims v. Nissan N. Am., Inc.*, 10th Dist. No. 12AP-833, 2013-Ohio-2662, ¶ 46, citing *Bittner* at 145. The court may then modify that calculation in accordance with the factors set forth in Prof.Cond.R. 1.5(a) to be considered in determining the reasonableness of a fee. *Id.* The party seeking an award of attorney fees bears the burden of proving the reasonableness of the fees sought. *Id.* at ¶ 47. *See also Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, ¶ 44

(10th Dist.) ("The party seeking an award of attorney fees bears the burden of proof to establish their reasonableness."). An award of attorney fees must be based on actual services performed, and there must be some evidence supporting the court's determination. *Sims* at ¶ 47.

{¶ 24} Appellants argue that appellee failed to justify the reasonableness of its attorney fees because appellee relied exclusively on an affidavit from its own attorney. In the affidavit, appellee's attorney attested that his fees were reasonable based on his years of experience and knowledge of the law. Appellee's attorney also asserted that his fees were generally in accordance with rates charged by other attorneys in the area with comparable experience and education. In *Sims*, this court noted that, absent contrary evidence, an attorney's explanation of his fees may constitute sufficient evidence to support a motion for attorney fees. *Id.* at ¶ 48. Appellants opposed the request for attorney fees by citing the rate charged by their own attorney. However, the trial court addressed this distinction in its judgment, explaining that appellants' attorney was a solo practitioner with 11 years less legal experience than appellee's attorney, who was a partner in a major, multi-city commercial law firm. The court also noted that Florence Odita represented appellants herself for much of the case and concluded that the hours worked and billing rate of appellants' attorney was limited by appellants' ability to pay. Therefore, the court reasoned that the fees charged by appellants' attorney did not necessarily contradict the reasonableness of the hourly rate charged by appellee's attorney.

{¶ 25} Appellants also argue that the trial court abused its discretion by conducting an independent inquiry regarding the prevailing rates for attorney fees. As noted in its judgment, the trial court inquired of several law firms regarding the hourly rates currently charged in commercial litigation. At the hearing on the amount of attorney fees, the judge asserted that he undertook this inquiry pursuant to common law providing that trial judges may rely on their own experience and knowledge in determining the proper award of attorney fees. In its judgment, the trial court indicated that the inquiries led to discovery of a decision by a federal bankruptcy court in Columbus indicating that the prevailing market rate for large firm bankruptcy partners was in the range of $400 per hour or more. The court also noted that none of the parties objected or offered additional data in response to the court's informal inquiry.

{¶ 26} It is true that, "[i]n very limited circumstances this court has held that the trial court may use its own knowledge and experience in reviewing the record to determine the necessity and reasonableness of attorney fees." *Goode v. Goode*, 70 Ohio App.3d 125, 134 (10th Dist.1991). That principle has generally been applied in domestic relations cases. *See id*; *Robinson v. Rummelhoff*, 10th Dist. No. 13AP-410, 2014-Ohio-1461, ¶ 49; *Grundey v. Grundey*, 10th Dist. No. 13AP-224, 2014-Ohio-91, ¶ 35; *Groza-Vance* at ¶ 44; *Tonti v. Tonti*, 10th Dist. No. 03AP-494, 2004-Ohio-2529, ¶ 110-11; *Ward v. Ward*, 10th Dist. No. 85AP-61 (June 18, 1985). *But see Enyart v. Columbus Metro. Area Community Action Org.*, 115 Ohio App.3d 348, 358 (10th Dist.1996); *Yoder v. Hurst*, 10th Dist. No. 07AP-121, 2007-Ohio-4861, ¶ 36 (Sadler, J., concurring). Furthermore, we note it is preferable that the trial court rely on the evidence presented by the parties. *See Enyart* at 358 ("While the better practice is to receive testimony regarding the reasonableness of fees, a trial court under some circumstances is permitted to use its own knowledge in reviewing the record to determine the reasonableness and necessity of the services rendered."). It appears that in this case the trial judge may have supplemented his own knowledge by inquiring of sources not party to this case. Nevertheless, because he relied on a recent federal bankruptcy decision addressing the prevailing hourly rate in the same market area and the appellants offered little contrary evidence, we conclude that the trial court's ultimate determination on fees was not an abuse of discretion. Moreover, while the amount of fees awarded in this case was substantial, given the significant complexity of fraudulent conveyance claims and the lengthy history of the proceedings, this is not a case where the attorney fee award is so high as to shock the conscience. *See Bittner* at 146.

{¶ 27} Accordingly, we overrule appellants' third assignment of error.

{¶ 28} For the foregoing reasons, we overrule appellants' three assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and O'GRADY, JJ., concur.

_____