OPINION
{¶ 1} In consolidated appeals, appellants, Michael J. Cassone, William L. Willis, Jr., and W. Vincent Rakestraw, appeal from the December 22, 2005 judgment of the Franklin County Court of Common Pleas, Probate Division, which found appellants in contempt of court and ordering each appellant to pay a fine of $250. For the following reasons, we affirm.
 {¶ 2} On September 14, 2004, plaintiff-appellee, Bank One Trust Company, N.A. ("Bank One"), as trustee of the Roger L. Scherer Trust (the "trust"), filed a complaint in the probate court for declaratory and injunctive relief, final accounting, and approval of a successor trustee. On December 2, 2005, appellants Willis and Cassone, as counsel for defendants, including trust beneficiaries Ronald E. Scherer and Linda Scherer Talbott, a.k.a. Linda S. Hayner, filed an "Application to Order Trustee to Act Pursuant to the Terms of the Roger L. Scherer Trust, Dated June 14, 1979, Before End of the 2005 Tax Year" (the "application"). Specifically, the trust beneficiaries sought an order compelling the trustee to comply with each beneficiary's " `right to withdraw annually Five Thousand Dollars ($5,000) or 5% of the principal of his trust whichever is the greater amount as valued as of the date of such withdrawal * * *' as long as such beneficiary would not be taking any shares of any corporation of which the trust owned more than 20% and the cumulative exercise of such withdrawal right for each beneficiary would not exceed 50% of the original value of the trust." The trial court scheduled a hearing on the application for December 21, 2005. On December 15, 2005, Rakestraw filed a memorandum in support of the application, and, on December 16, 2005, Bank One filed a memorandum in opposition to the application. The contempt charges underlying the instant appeal arose from representations contained in the application and made at the December 21, 2005 hearing.
 {¶ 3} On December 12, 2005, after filing the application, but prior to the scheduled hearing, Willis and Cassone filed a motion to withdraw as defendants' counsel. On December 20, 2005, the probate court filed an entry adjudicating several outstanding motions and, in that entry, granted Bank One's motion to compel discovery. In its motion to compel, Bank One reiterated allegations from its complaint that defendants had failed to provide Bank One with documentation necessary for Bank One to prepare a final accounting of the trust. Additionally, the trial court continued adjudication of Willis and Cassone's motion to withdraw as counsel, noting that the motion did not comply with Loc.R. 78.2 and stating that, upon compliance with the local rule and the court's order regarding production of documents, the court would consider the motion. On December 21, 2005, Willis and Cassone filed a supplemental memorandum in support of their motion to withdraw in an effort to comply with Loc.R. 78.2.
 {¶ 4} Despite the trial court's inaction on their motion to withdraw as counsel, neither Willis nor Cassone attended the December 21, 2005 hearing. Rather, Rakestraw represented the beneficiaries at the hearing. When questioned about Willis and Cassone's absence, Rakestraw suggested that they might not have received the court's order continuing adjudication of their motion to withdraw as counsel. At the hearing, Rakestraw and counsel for Bank One made oral arguments to the court regarding the application, and Bank One submitted a notebook of exhibits, which the trial court admitted without objection. At the conclusion of the hearing, the probate court orally granted the application based on the language of the trust, but stated that it could not determine the value of the trust. The trial court went on to hold Willis, Cassone, and Rakestraw in contempt of court for misrepresentations contained in the application and reiterated at the hearing and orally ordered each appellant to pay $250 by 5:00 p.m. that day. Rakestraw notified Willis and Cassone of the contempt charges and attendant fines, and all three appellants paid their fines on December 21, 2005.
 {¶ 5} The trial court's finding of contempt stemmed from appellants' representations regarding the value of the trust. In the application, Willis and Cassone stated that Exhibit C to the application represented "the most current statement from Bank One verifying the current value of the beneficiaries' respective trusts" and that, "for purposes of this request, Defendants have permitted me on their behalf to accept in good faith, [Bank One's] statement for purposes of honoring the beneficiaries' written requests for the Plaintiff to follow the terms of said trust." (Emphasis added.) Exhibit C consists of two pages, purportedly reflecting the assets of the trust for Ronald E. Scherer and Linda S. Hayner. Although Willis and Cassone failed to identify Exhibit C as a portion of a larger document, the two pages are excerpted from a 56-page settlement document, entitled "Agreed Final Judgment" ("settlement document"), which the parties ultimately failed to execute. A portion of the settlement document not attached to the application states that "Bank One has prepared final accounts for each of the Trusts * * * so as to account for the disposition and/or replacement, at original book value, not market value, of the initial assets in the Trusts[.]" It is from such accounts that Willis and Cassone excerpted their two-page Exhibit C. The trial court admitted the settlement document as evidence without objection.
 {¶ 6} At the hearing, Rakestraw responded to the trial court's questions regarding the values set forth in Exhibit C, as follows:
MR. RAKESTRAW: * * * The valuation used by Mr. Willis is the value that's placed on it by the — by the fiduciary, Bank One, is the value we used and applied it to the specific language. Their accountant did it. It boils down to 3,000,000, 1.5 for each trust, and that's how the value is —
THE COURT: What was the purpose of that figure, though? Is that a market value or a book value?
MR. RAKESTRAW: I think that — we take it as a market value, your Honor.
(Tr. at 5-6.) The exchange between Rakestraw and the trial court continued:
THE COURT: Okay. Today. If you're asking for a distribution of a five and five power, it should be valued as of the date of the distribution.
MR. RAKESTRAW: That's correct.
THE COURT: The trust is to be valued. Whose responsibility is it to make that determination?
MR. RAKESTRAW: I think it's the fiduciary's responsibility.
THE COURT: I agree.
MR. RAKESTRAW: And as far as the documentation we have, that's what they made.
THE COURT: Okay.
(Tr. at 7-8.) At the conclusion of the hearing, the court stated:
But if you recall, my first question to you was: What are those values, market value or book value? This whole [settlement document] addresses book value. And it's a misrepresentation to the Court that the pleadings filed requesting a five and five distribution based on those figures as market value.
So I hold your client in contempt of court. I hold you in contempt of court, and I hold the two lawyers who filed [the application] in contempt of court. That's a direct contempt of court.
* * * Each counsel is fined $250. And you are to pay your $250 by 5:00 today, and we will notice other counsel of that. * * *
(Tr. at 38.)
 {¶ 7} On December 22, 2005, the day after the hearing, the trial court entered judgment consistent with its oral pronouncements at the hearing. The court approved the application, but noted that Bank One could not determine the current value of the trust until defendants complied with discovery requests, as previously ordered. The court also held Willis, Cassone, and Rakestraw in contempt of court for making material misrepresentations of fact to the court regarding the value of the trust and ordered appellants to pay fines of $250.
 {¶ 8} On January 20, 2006, Willis and Cassone filed a joint notice of appeal and Rakestraw filed a separate notice of appeal from the contempt order. This court, sua sponte, consolidated the appeals for purposes of record filing, briefing, and oral argument on February 6, 2006. Appellants assign the following as error:
FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY HOLDING [APPELLANTS WILLIS, CASSONE, AND RAKESTRAW] IN CONTEMPT, WITHOUT NOTICE OR A HEARING, IN VIOLATION OF APPELLANTS' CONSTITUTIONAL DUE PROCESS RIGHTS.
SECOND ASSIGNMENT OF ERROR
THE TRIAL COURT ABUSED ITS DISCRETION BY HOLDING [APPELLANTS WILLIS, CASSONE, AND RAKESTRAW] IN CONTEMPT.
 {¶ 9} As an initial matter, we examine whether the instant appeal is moot, given appellants' payment of the $250 sanctions. This court has held that "[a]n appeal from a contempt charge is moot when a defendant has made payment or otherwise purged the contempt." Farley v. Farley, Franklin App. No. 02AP-1046, 2003-Ohio-3185, at ¶ 62. Such a holding stems from the general rule that satisfaction of a judgment strips a party of the right to appeal. As this court stated in Bob Krihwan Pontiac-GMCTruck, Inc. v. Gen. Motors Corp. (2001), 145 Ohio App.3d 671,675, citing Rauch v. Noble (1959), 169 Ohio St. 314, 316:
* * * Where the court rendering judgment has jurisdiction of the subject-matter of the action and of the parties, fraud has not intervened, and the judgment is voluntarily paid andsatisfied, payment puts an end to the controversy and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment. * * *
(Emphasis sic.) Because an appellate court's duty is to decide actual controversies, it may not decide contempt appeals once the contemnor has purged the contempt. Caron v. Manfresca (Sept. 23, 1999), Franklin App. No. 98AP-1399, citing In re Knight
(Mar. 16, 1994), Ross App. No. 93CA1965.
 {¶ 10} In footnotes to their appellate briefs, appellants argue that their appeals are not moot because they involuntarily paid their contempt fines. Appellants propose that, because the trial court ordered them to make payment on the day of the hearing, their compliance was not voluntary, but, rather, under duress. In support of that proposition, appellants rely on the Eighth District Court of Appeals' opinion in State v. Fortson
(Jan. 10, 2002), Cuyahoga App. No. 79501. In Fortson, the trial court summarily held an attorney in contempt as a result of the attorney's questioning of a venireman and fined the attorney $100, which the court told him to "`pay * * * before you leave today.'" Based on the trial court's order to pay before leaving, the Eighth District concluded that the attorney's payment did "not reflect a voluntary situation but rather one where he paid the fine under duress." Consequently, the court determined that the appeal was not moot. See, also, In re Contempt of Morris
(1996), 110 Ohio App.3d 475, 479 (compliance with trial court's order to pay fine before leaving the courtroom does not constitute a voluntary payment).
 {¶ 11} Other courts have been less liberal than the Eighth District in classifying a satisfaction of judgment as involuntary. In Atlantic Veneer Corp. v. Robbins, Pike App. No. 03CA719, 2004-Ohio-3710, the Fourth District Court of Appeals chose to follow courts holding that a satisfaction of judgment is involuntary only upon a showing of economic duress. In line with courts adopting the more restrictive definition of involuntary, the Fourth District also held that "satisfaction of a judgment renders an appeal moot where an appellant may preserve her appeal rights by seeking a stay of execution pending appeal." Id. at ¶ 17. This court has relied on similar reasoning, deeming a satisfaction of judgment voluntary, where a party could have moved for a stay of execution of judgment, but failed to do so. See City of Grove City v. Clark, Franklin App. No. 01AP-1369, 2002-Ohio-4549, at ¶ 16; Harbourtown Properties, Inc. v.Citizens Fed. Bank (Nov. 10, 1997), Franklin App. No. 97APE03-328; Bob Krihwan Pontiac-GMC Truck, Inc. at 675.
 {¶ 12} While this court has not addressed the precise scenario presented in Fortson or the similar scenario presented here, we have routinely found appeals from contempt charges moot where appellants have paid or otherwise purged the contempt prior to appeal to avoid adverse consequences. In Caron, this court found an appeal moot where the appellant purged his contempt prior to appeal to avoid continued incarceration. In that case, the trial court held an appellant in contempt, but withheld sentencing to allow appellant 30 days to purge his contempt by paying $29,589. After the appellant failed to pay the purge amount, the trial court sentenced the appellant to an indefinite jail term until he paid the purge amount in full. The appellant served two days in jail before the full amount was paid. We stated that the appellant's compliance with the trial court's mandate for purging the contempt rendered his assignment of error regarding the contempt moot. See, also, Davis v. Lewis (Dec. 12, 2000), Franklin App. No. 99AP-814 (holding that the appellant's payment of a $400 purge amount to avoid a ten-day jail sentence rendered the contempt finding moot). Similarly, inEvans v. Evans (Sept. 20, 2001), Franklin App. No. 00AP-1459, the trial court found the appellant in contempt and sentenced him to ten days incarceration. Unable to post bond, the appellant served the sentence. On appeal, we held that, "[t]o the extent that [appellant] served the ten-day sentence imposed, his appeal of the contempt finding is moot." Id.
 {¶ 13} Here, although appellants could have moved for a stay of execution of the trial court's contempt order, they did not. Rather, appellants voluntarily paid their fines and did so before the trial court even journalized its contempt order. Appellants fail to present any basis for concluding that their payment was involuntary. Because we find that appellants voluntarily paid their contempt sanctions, we find appellants' appeal moot. Nevertheless, even were we to conclude that these appeals presented a controversy for determination, we would find appellants' assignments of error unpersuasive.
 {¶ 14} In their first assignment of error, appellants contend that the trial court erred by summarily holding them in contempt without providing them with notice of the contempt charges or a hearing, in violation of their rights to due process of law.
 {¶ 15} The Ohio Supreme Court has defined contempt as " `conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.'" Denovchek v. Bd.of Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 15, quotingWindham Bank v. Tomaszczyk (1971), 27 Ohio St.2d 55, paragraph one of the syllabus. A court has both inherent and statutory authority to punish contempt. Howell v. Howell, Franklin App. No. 04AP-436, 2005-Ohio-2798, at ¶ 19, quoting In re Contempt ofMorris at 479. Courts categorize contempt as either civil or criminal and as either direct or indirect.
 {¶ 16} The distinction between criminal and civil contempt is based on the character and purpose of the punishment imposed.Ford v. Ohio Dept. of Rehab. Corr., Franklin App. No. 05AP-357, 2006-Ohio-2531, at ¶ 43, citing Brown v. Executive200, Inc. (1980), 64 Ohio St.2d 250, 254. Criminal contempt proceedings vindicate the authority of the legal system and punish the party who offends the court, whereas civil contempt proceedings coerce a party to comply with a court order. Turnerv. Turner (May 18, 1999), Franklin App. No. 98AP-999, citingConTex, Inc. v. Consolidated Technologies, Inc. (1988),40 Ohio App.3d 94, 95, and Pedone v. Pedone (1983), 11 Ohio App.3d 164,165. It is undisputed that the trial court's finding of contempt here was criminal in nature, based on appellants' misrepresentations. The purpose of the contempt finding was not to coerce compliance with a court order but to punish appellants for their completed acts of misrepresentation.
 {¶ 17} The more important distinction for purposes of these appeals is the distinction between direct and indirect contempt, which determines the process due a contemnor. R.C. 2705.01
provides that a court may summarily punish a contemnor for direct contempt, and due process does not require that the court grant the contemnor a hearing. In re Purola (1991),73 Ohio App.3d 306, 312. However, due process and the statutory provisions of R.C. 2705.03 require that an individual accused of indirect contempt be given adequate notice, time to prepare a defense, and an opportunity to be heard. Rose v. Rose (Mar. 31, 1997), Franklin App. No. 96APF09-1150. "More specifically, due process requires that the alleged contemnor has the right to notice of the charges against him or her, a reasonable opportunity to defend against or explain such charges, representation by counsel, and the opportunity to testify and to call other witnesses, either by way of defense or explanation." Turner,
citing Courtney v. Courtney (1984), 16 Ohio App.3d 329, 332. Thus, the procedural due process rights of notice and a hearing apply only with respect to charges of indirect contempt. Accordingly, we shift our focus to whether the trial court found appellants in direct or indirect contempt of court.
 {¶ 18} Direct contempt occurs in the presence of the court or so near the court as to obstruct the administration of justice. R.C. 2705.01; Turner. In contrast, indirect contempt involves behavior outside the presence of the court that demonstrates a lack of respect for the court or for the court's orders. Byronv. Byron, Franklin App. No. 03AP-819, 2004-Ohio-2143, at ¶ 12, citing State v. Drake (1991), 73 Ohio App.3d 640, 643. R.C.2705.02 enumerates certain acts that may constitute indirect contempt, but it does not limit a court's discretion to determine whether such acts constitute direct or indirect contempt under the circumstances of each case. State v. Kilbane (1980),61 Ohio St.2d 201, 204, citing State v. Local Union 5760 (1961),172 Ohio St. 75, 81.
 {¶ 19} Appellants contend that any finding of contempt against them must be indirect because it stems from acts that occurred outside the physical presence of the court. Willis and Cassone argue that they made the representations in the application outside the court's presence and that they were not present at the December 21, 2005 hearing. Rakestraw argues that his actions were also indirect because the trial court asked him to comment on the merits of the application, which was filed outside the court's presence.
 {¶ 20} The concept of direct contempt is not confined to disorderly or obstreperous acts in the physical presence of the court itself. Local Union 5760 at 81, citing In re Estate ofWright (1956), 165 Ohio St. 15. Indeed, the Ohio Supreme Court has recognized that "[a] `physical presence test' is not always an adequate guide in determining whether offensive acts are of such gravity as to seriously interfere with the administration of justice so as to warrant summary punishment." Local Union 5760
at 81. Rather, "a court may be deemed constructively present wherever any of its officers is engaged in the prosecution of the business of the court according to law." Id. at 82, citing Beachv. Beach (1946), 79 Ohio App. 397. Moreover, "any act which is calculated to impede, embarrass or obstruct the court in the administration of justice is to be considered as committed in the presence of the court." Beach at 403, citing 12 American Jurisprudence, 392, Section 5. The Ohio Supreme Court has recognized that "[i]f the act constitutes a fraud upon the court and is such as to influence or persuade the court to make orders in its own courtroom, concerning which it probably would have done otherwise had the act not occurred, there is such an obstruction of justice as to constitute direct contempt." In reEstate of Wright at 25.
 {¶ 21} "`Courts, in their sound discretion, have the power to determine the kind and character of the conduct which constitutes direct contempt of court.'" Ford at ¶ 46, quotingKilbane, at paragraph one of the syllabus. Absent an abuse of discretion, an appellate court will not disturb a trial court's contempt determination. Ford at ¶ 47. "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 22} Appellants argue that the trial court's order constituted a finding of indirect criminal contempt and that the trial court erred by summarily imposing a fine without affording appellants notice of the contempt charges and a hearing. Although appellants argue that the trial court's order constituted a finding of indirect, criminal contempt, the trial court stated at the hearing:
* * * I hold your client in contempt of court. I hold you in contempt of court, and I hold the two lawyers who filed [the application] in contempt of court. That's a direct contempt of court.
(Tr. at 38.) Thus, the trial court expressly determined that appellants were in direct contempt of court, and we find no abuse of discretion in the trial court's categorization of appellants' contempt as direct.
 {¶ 23} In Fed. Land Bank Assn. of Fostoria v. Walton
(1995), 99 Ohio App.3d 729, 734, the Eighth District Court of Appeals addressed a trial court's summary finding of direct, criminal contempt arising out of an attorney's statements in a court filing. The court concluded that the attorney's filing of a memorandum in opposition to a motion for summary judgment, in which he attacked the trial judge's impartiality, and the attorney's service of the memorandum on the other parties "sufficiently involved court personnel and officers of the court so as to occur within the constructive presence of the [court]" and constituted direct contempt. Id. The court stated that the "appellant's actions were tantamount to calling the trial court judge a fraud in open court and were designed to disrupt the court proceedings[.]" Id.
 {¶ 24} Here, the trial court's finding of contempt was based on misrepresentations contained in the application, signed by Willis and Cassone, and on identical misrepresentations made by Rakestraw in his argument in support of the application. In the application, Willis and Cassone stated that Exhibit C represented "the most current statement from Bank One verifying the current value of the beneficiaries' respective trusts" despite the fact that the settlement document from which appellants drew their Exhibit C expressly stated that the values reflected therein represented original book values. When questioned by the trial court, Rakestraw stated: "[W]e take [the value assigned in Exhibit C] as a market value[.]" (Tr. at 6.) Despite the fact that the representations by Willis and Cassone were limited to the written application, their filing and service of that document brought their actions within the constructive presence of the court. Appellants' misrepresentations, whether filed in the application or made in open court in support of the application, were made to persuade the court to make orders based on the misrepresented values and, thus, were designed to impede the court in the administration of justice. As Rakestraw conceded at the hearing, the requested disbursement from the trust must be based on the current market value of the trust, and appellants misrepresented their evidence to reflect such values. Within its discretion, the trial court could reasonably determine that appellants' misrepresentations constituted direct contempt and that, consequently, the procedural due process rights to notice and a hearing were inapplicable. Accordingly, we overrule appellants' first assignment of error.
 {¶ 25} In their second assignment of error, appellants argue that the trial court abused its discretion by holding them in contempt of court because the record lacked evidence that they intended to defy the court or obstruct the administration of justice, an essential element of indirect criminal contempt. SeeMidland Steel Prods. Co. v. U.A.W. Local 486 (1991),61 Ohio St.3d 121, paragraph two of the syllabus ("[i]n cases of criminal, indirect contempt, it must be shown that the alleged contemnor intended to defy the court"). Midland Steel expressly applies only to instances of indirect, criminal contempt, and we have determined that the trial court did not abuse its discretion in holding appellants in direct contempt of court. Nevertheless, we conclude that the trial court had sufficient evidence on which to base its finding of contempt against appellants.
 {¶ 26} Proof of the elements of criminal contempt, including intent, may be established by circumstantial evidence. Id. at 128. "In a direct contempt, a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts. * * * A party's intent to obstruct justice, for purposes of a contempt charge, may be inferred if his conduct disclosed reckless disregard for the duty of decency owed to his fellowman, or to his profession." In re Contempt of Gilbert (Dec. 16, 1993), Cuyahoga App. No. 64299. At the hearing, Bank One's counsel offered a notebook of exhibits, including the settlement document, with its express statement that the values excerpted in Exhibit C to the application represented original book values. Despite such express language, and without identifying Exhibit C as part of the settlement document, Willis and Cassone represented Exhibit C as reflecting the trust's current values. At the hearing on the application, Rakestraw also affirmatively stated that the values in Exhibit C represented the market value of trust assets.
 {¶ 27} At the hearing, Bank One's counsel argued that all appellants received the complete settlement document and were or should have been aware that the values reflected therein were original book values. Willis and Cassone received the settlement document from Bank One and subsequently returned it with Mr. Scherer's proposed revisions, which left unaltered the statement that values reflected therein represented original book values. Bank One's counsel also stated that the complete settlement document was transmitted by facsimile on October 7, 2005, to Rakestraw, as identified on a cover sheet to Bank One's Exhibit G. Although Rakestraw stated that he was not involved in settlement negotiations, which Willis and Cassone handled on behalf of the trust beneficiaries, he did not deny receiving the settlement document. Rakestraw offered no response to Bank One's argument regarding appellants' misrepresentations other than to state that the values contained in the settlement document "are the only valuations that we have[.]" (Tr. at 38.) While Rakestraw's statement may be true, it does not explain appellants' misrepresentations that such values constituted the current, market value of trust assets, in direct conflict with the express language of the settlement document.
 {¶ 28} From the evidence submitted by Bank One and admitted at the hearing, the trial court could reasonably conclude that appellants knew that the values contained in Exhibit C represented original book values rather than current, market values, and that appellants knowingly misrepresented the values and current, market values in an attempt to obstruct the administration of justice. Accordingly, we discern no abuse of discretion in the trial court's finding of criminal contempt, and we overrule appellants' second assignment of error.
 {¶ 29} Having overruled appellants' two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.
Judgment affirmed.
McCormac, J., concurs.
Brown, J., concurs in judgment only.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.