[Cite as *Hadinger v. Hadinger*, 2016-Ohio-821.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Alla Hadinger, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 15AP-09 |
| v. | : | (C.P.C. No. 13DR-0290) |
| Darin B. Hadinger, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 3, 2016

**On brief:** *Tyack, Blackmore, Liston & Nigh, Co., L.P.A., Margaret L. Blackmore,* and *Elizabeth R. Werner,* for appellee.

**On brief:** *Tamms Law Office, LLC,* and *Christopher J. Tamms,* for appellant.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations

HORTON, J.

{¶ 1} Defendant-appellant, Darin B. Hadinger ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a divorce to him and plaintiff-appellee, Alla Hadinger ("appellee"). Because the trial court did not abuse its discretion, we affirm the judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant and appellee were married on April 27, 2002. Two minor children were born as issue of the marriage, G.H. (d.o.b. October 16, 2005) and B.H. (d.o.b. September 27, 2011). Appellee filed a complaint for divorce on January 25, 2013, and appellant filed an answer and counterclaim on March 18, 2013. Before she filed the complaint for divorce, appellee used funds from a retirement account from Cooper Communications to pay bills.

{¶ 3}   On April 19, 2013, the magistrate issued a temporary support order. The temporary support order required each party to pay one-half of the mortgage on the marital residence. The order required appellant to pay the utility bills for the marital residence, and required appellee to make payments for the marital credit cards. (Magistrate's Temporary Order, 2-3.) The order required both parties to pay for half of day care expenses for the children. Although appellee paid the entire February and March mortgage payments, neither party made any further payments. The bank filed a foreclosure action on the marital residence and sold it through foreclosure proceedings.

{¶ 4}   Both parties filed motions to modify the temporary order pursuant to Civ.R. 75. Additionally, appellee filed a motion for contempt alleging appellant had failed to pay the mortgage and utilities and appellant filed a motion for contempt alleging that appellee violated the temporary order by disposing of her retirement account, removing personal property from the marital residence, terminating utilities at the marital residence, and incurring debt on a marital credit card. After a trial in late May 2014, the trial court disposed of all the motions in the final entry.

{¶ 5}   At appellant's request, the trial court interviewed G.H. At trial, the Guardian ad Litem testified regarding custody of the children. On December 10, 2014, the trial court issued a Judgment Entry/Decree of Divorce, granting a divorce and allocating all marital assets and liabilities between the parties. The trial court designated appellee as the residential parent and legal custodian of the minor children, and granted appellant parenting time. The trial court dismissed the parties' Civ.R. 75 motions. The trial court granted appellee's motion for contempt finding appellant failed to abide by the prior orders of the court.  Appellant was sentenced to five days in jail with the sentence suspended if he purged his contempt by paying $500 in attorney fees. The trial court denied appellant's motion for contempt. (Decision.) Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 6}   Appellant assigned the following errors for our review:

[I.] The trial court erred and abused its discretion in holding Defendant-Appellant in contempt and ordering him to pay attorney fees for said contempt.

[II.] The trial court erred and abused its discretion when it failed to determine an accurate value for the debt owed to Scott Shapiro and then divided this martial debt inequitably.

[III.] The trial court erred and abused its discretion when it allocated certain marital debts solely to Defendant-Appellant, specifically debts to Jay Elkes and Aaron Bruggeman.

[IV.] The trial court erred and abused its discretion when it failed to inquire into, value, and equitably divide a marital retirement account from Cooper Communications.

[V.] The trial court erred and abused its discretion when it incorrectly completed the child support worksheet that was attached to the final Judgment Entry.

a. The trial court used a figure for health insurance on line 20a of the statutory worksheet that was not supported by the record.

b. The trial court failed to give Defendant-Appellant credit for the $2,000 that he paid for childcare expenses on Line 19 of the statutory worksheet.

c. The trial court used a figure for childcare on Line 19 of the statutory worksheet that was not supported by the record.

d. The trial court failed to include Plaintiff-Appellee's bonus on the child support worksheet.

## III. STANDARD OF REVIEW

{¶ 7}   This court reviews matters of contempt, child support, and the division of marital assets and liabilities using an abuse of discretion standard. *Rife v. Rife*, 10th Dist. No. 11AP-427, 2012-Ohio-949, ¶ 9; *Wehrle v. Wehrle*, 10th Dist. No. 12AP-386, 2013-Ohio-81, ¶ 8; *Hood v. Hood*, 10th Dist. No. 10AP-999, 2011-Ohio-3704, ¶ 14. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## IV. FIRST ASSIGNMENT OF ERROR–CONTEMPT

{¶ 8}   In his first assignment of error, appellant contends that the trial court erred in granting appellee's motion for contempt when both parties engaged in the same misconduct. Appellee's motion contended that appellant failed to pay one-half of the mortgage and the utilities and she additionally argued that appellant had failed to pay the ordered expenses. "Contempt results when a party before a court disregards or disobeys

an order or command of judicial authority." *Byron v. Byron*, 10th Dist. No. 03AP-819, 2004-Ohio-2143, ¶ 11, citing *First Bank v. Mascrete, Inc.*, 125 Ohio App.3d 257, 263 (4th Dist.1998). A finding of contempt of court may also involve an act or omission that substantially disrupts the judicial process. *Id.*, citing *In re Davis*, 77 Ohio App.3d 257 (2d Dist.1991).

{¶ 9} As an initial matter, we examine whether this assignment of error is moot, given that appellant asserts that he paid the $500 in attorney fees. In his brief, appellant contends that after he filed his notice of appeal, he sought a stay regarding enforcement of the contempt sanction and the trial court denied it, so he paid the $500. Appellant filed a motion for stay on February 27, 2015; however, the record does not indicate that the trial court ruled on the motion. Generally, "[a]n appeal from a contempt charge is moot when a defendant has made payment or otherwise purged the contempt." *Farley v. Farley*, 10th Dist. No. 02AP-1046, 2003-Ohio-3185, ¶ 62, citing *State v. Berndt*, 29 Ohio St.3d 3, 4 (1987); *Caron v. Manfresca*, 10th Dist. No. 98AP-1399 (Sept. 23, 1999). This result "stems from the general rule that satisfaction of a judgment strips a party of the right to appeal." *Bank One Trust Co., N.A. v. Scherer*, 10th Dist. No. 06AP-70, 2006-Ohio-5097, ¶ 9.

{¶ 10} Courts classify a contempt finding as either civil or criminal in nature. "The distinction between civil and criminal contempt centers on 'the purpose and character of the punishment which is imposed upon the contemnor by the trial court.' " *Columbus v. Cicero*, 10th Dist. No. 12AP-407, 2013-Ohio-3010, ¶ 31, quoting *Newcomer v. Newcomer*, 6th Dist. No. L-10-1299, 2011-Ohio-6500, ¶ 45, citing *Cleveland v. Geraci*, 8th Dist. No. 64075 (Dec. 16, 1993). The purpose of civil contempt is to coerce a party in violation of a court order to comply with the order for the benefit of the complaining party. *Pugh v. Pugh*, 15 Ohio St.3d 136, 139 (1984). In a civil contempt case, the sanction must allow the contemnor the opportunity to purge prior to any punishment. *Rowell v. Smith*, 10th Dist. No. 12AP-262, 2012-Ohio-4667, ¶ 7, citing *Burchett v. Miller*, 123 Ohio App.3d 550, 552 (6th Dist.1997). As such, "the contemnor is said to carry the keys of his prison in his own pocket, since he will be freed if he agrees to do as ordered." *Cicero* at ¶ 31. Criminal contempt, on the other hand, involves a punitive sanction designed to vindicate the authority of the court. *McRae v. McRae*, 1st Dist. No. C-110743, 2012-Ohio-2463, ¶ 6.

{¶ 11} In civil contempt cases where the contemnor has paid the fine or otherwise purged the contempt, the appeal is moot. Because an appellate court's duty is to decide actual controversies, "it may not decide contempt appeals once the contemnor has purged the contempt." *Caron*.

{¶ 12} Appellant sought a stay in the trial court, but he believed the trial court denied it. The record reveals that the motion remains pending. Appellant did not seek a stay in this court. Rather, he claims he paid the attorney fees. Given that appellant admitted he paid the attorney fees and appellee did not contest the issue, appellant's appeal on this issue was rendered moot. Thus, appellant's first assignment of error is rendered moot.

## V. SECOND, THIRD, AND FOURTH ASSIGNMENTS OF ERROR–DIVISION OF MARITAL ASSETS AND LIABILITIES

{¶ 13} Appellant's second, third, and fourth assignments of error each relate to the division of marital assets and liabilities, thus, we will address them together. Appellant's second assignment of error relates to the valuation and division of the marital debt to Scott Shapiro. Appellant's third assignment of error alleges a failure on the part of the trial court to divide the marital debts to Jay Elkes and Aaron Bruggeman equitably. Appellant's fourth assignment of error alleges error in the trial court's evaluation and division of a marital retirement account from Cooper Communications. Because the trial court equitably divided all marital assets and liabilities, appellant's assignments of error are without merit.

{¶ 14} A domestic court has broad discretion to make divisions of property. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401 (1988), citing *Berish v. Berish*, 69 Ohio St.2d 318 (1982). "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(B). The characterization of property as marital or separate property is a factual issue. *Taub v. Taub*, 10th Dist. No. 08AP-750, 2009-Ohio-2762, ¶ 15. An appellate court will affirm a trial court's valuation and division of property absent an abuse of discretion. *Colley v. Colley*, 10th Dist. No. 09AP-333, 2009-Ohio-6776, ¶ 17, citing *Roberts v. Roberts*, 10th Dist. No. 08AP-27, 2008-Ohio-6121, ¶ 16. If there is some competent, credible evidence to

support the trial court's decision, there is no abuse of discretion. *Colley* at ¶ 17, citing *Middendorf* at 401, citing *Ross v. Ross*, 64 Ohio St.2d 203 (1980).

{¶ 15} R.C. 3105.171(C)(1) provides that, "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." The trial court is not required to make an equal division of the marital estate, so long as the division is equitable. *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraphs one and two of the syllabus. After review, we find that the trial court did make an equitable division of all marital assets and liabilities.

{¶ 16} Appellant alleges in his second assignment of error that the trial court improperly calculated the value of the marital debt owed to Scott Shapiro. Appellee testified that the parties owed a marital debt to Mr. Shapiro. It was a loan to the parties from a friend. The parties signed an IOU in 2009. (Plaintiff's exhibit No. 11.) Appellee testified she made payments of $250 per month from the shared checking account, she made a payment with her retirement funds, and she paid $250 per month since the parties separated. (Plaintiff's exhibit No. 11.) Plaintiff's exhibit No. 11 is partially illegible but indicates that loan initially was for $16,500 plus 5 percent interest. Appellee testified she believed the remaining balance was $6,025. (Tr. Vol. I, 84.)

{¶ 17} The trial court found appellee's testimony credible on the issue of whether a marital debt due to Mr. Shapiro exists. However, the trial court found appellee's testimony unclear regarding whether the $6,025 was the balance due at the date of trial in June 2014 or the balance as of the date of separation. The trial court required appellee to provide appellant with a statement of the exact payments she made to Mr. Shapiro over the 15 months of separation and ordered appellant to pay half of the amount appellee paid at $250 per month until paid in full and half of the $6,025 balance.

{¶ 18} Appellant argues that if appellee paid $250 per month with marital funds from October 2009 until January 2013 when the parties separated, $250 per month with her own funds and $5,000 from her retirement funds, then approximately 74 payments of $250 had occurred and the balance could not equal $6,025.

{¶ 19} Appellant further argues that the evidence presented at trial does not support the value assigned by the trial court. The trial court was skeptical about the true remaining balance on the marital debt to Scott Shapiro. In its judgment entry, the trial

court ordered appellee to provide appellant with an invoice of what she had paid previously to Scott Shapiro, and the remaining balance. (Decision, 28.) The trial court then ordered that appellant pay for one-half of the debt to Mr. Shapiro, regardless of the remaining balance. Even absent a definitive value of the debt, the trial court still made an equal and equitable division of the debt by dividing it in half. This division did not prejudice appellant since he was ordered to pay half of the remaining balance and if it is less than $6,025, as he contends, then he owes half of the balance, not half of the $6,025 ($3,012.50). The failure to establish a specific value for an asset or liability does not amount to an abuse of discretion when the division of said asset or liability is not inequitable or prejudicial. *See Saks v. Riga*, 8th Dist. No. 101091, 2014-Ohio-4930, ¶ 21; *Rittinger v. Rittinger*, 10th Dist. No. 86AP-262 (Dec. 31, 1986). Appellant has failed to demonstrate how an equal division of the liability is inequitable. The trial court did not abuse its discretion and appellant's second assignment of error is overruled.

{¶ 20} In his third assignment of error appellant argues that the trial court erred by assigning solely to him the marital debts owed to Jay Elkes and Aaron Bruggeman. Appellant also argues that the trial court failed to consider the factors in R.C. 3105.171.

{¶ 21} When dividing marital property, the court is required to consider all factors enumerated in R.C. 3105.171(F). However, it is not required to provide an exhaustive itemization of each factor. *Hightower v. Hightower*, 10th Dist. No. 02AP-37, 2002-Ohio-5488, ¶ 21. The trial court decision must contain an indication that it considered the statutory factors. *Casper v. DeFrancisco*, 10th Dist. No. 01AP-604, 2002-Ohio-623. R.C. 3105.171(F) provides:

> In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
>
> (1) The duration of the marriage;
>
> (2) The assets and liabilities of the spouses;
>
> (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
>
> (4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 22} Although the trial court did not explicitly itemize the factors, a reading of the trial court decision indicates that the trial court considered the relevant statutory factors. (Decision, 24-31.)

{¶ 23} Appellee testified that the debt to Jay Elkes was a personal loan to the parties during the time appellant was unemployed to pay monthly expenses. (Tr. Vol. I, 137-38; Vol. III, 575.) Appellee testified that she borrowed $9,000 from her mother and appellant borrowed $13,000 from her mother's friend, Elkes. Elkes filed an action in the Franklin County Municipal Court against appellant for $13,000 and appellant admits Elkes received a judgment against him. (Appellant's Brief, 23.) Appellee testified she used funds from her retirement account to pay $9,000 to her mother.

{¶ 24} The trial court assigned the debt owed to Elkes solely to appellant. Appellee claimed that she had paid her share of the debt owed to Elkes. (Tr. Vol. I, 139.) Elkes has received a judgment from the Franklin County Municipal Court against appellant for the outstanding debt owed. Elkes has not sought further payment from appellee and he filed the action solely against appellant. The trial court found that because appellant had a judgment against him for the outstanding debt to Elkes, he was solely responsible for it. However, we cannot say that the trial court abused its discretion because it divided the liabilities. Some debts were divided equally between the parties, such as the Shapiro debt, and some were assigned to appellant alone and some were assigned to appellee alone,

such as the Wright-Patt Credit Union credit card, the Discover credit card, the Chase credit card, and the Macy's credit card. (Decision, 29-30.)

{¶ 25} Appellant also alleges that it was error to assign him solely the debt owed to Aaron Bruggeman. Appellant testified the debt was for legal services regarding repairs on his car during a business trip in Shadyside, Ohio. (Tr. Vol. III, 458-60.) The trial court found that appellant should pay the liability because he is maintaining the use of the automobile. Again, we cannot say that the trial court abused its discretion in assigning these liabilities. The division utilized by the trial court is equitable since each party received certain debts and each is responsible for the assigned debts free and clear of the other. There is nothing unreasonable, arbitrary, or unconscionable about the trial court's assignment of these debts. Accordingly, appellant's third assignment of error is overruled.

{¶ 26} In his fourth assignment of error, appellant alleges that the trial court failed to divide appellee's retirement account from Cooper Communications equitably. The trial court concluded that appellee had liquidated the retirement account to pay marital debts, prior to filing her complaint for divorce. (Decision, 27.) The trial court also recognized that the parties had taken similar actions with other marital retirement accounts after appellant quit his job with American Electric Power  in order to pay debts. (Decision, 27.)

{¶ 27} Appellant argues that since appellee did not disclose the existence of the Cooper Communications account on her financial affidavit, the trial court did not adequately inquire as to how appellee spent the money and therefore, the marital money was inadequately distributed. Appellant in essence seeks a distributive award in exchange for the liquidation of the retirement account.

{¶ 28} A "distributive award" is defined as "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property." R.C. 3105.171(A)(1). If a spouse has engaged in financial misconduct, the court may award the offended spouse a distributive award or a greater award of marital property as compensation. R.C. 3105.171(E)(3). The burden of proving financial misconduct is on the complaining party. *Galloway v. Khan*, 10th Dist. No. 06AP-140, 2006-Ohio-6637, ¶ 26, citing *Mantle v. Sterry*, 10th Dist. No. 02AP-286, 2003-Ohio-6058, ¶ 31. The trial court has discretion to determine whether financial misconduct occurred. *Id.*, citing *Babka v. Babka*, 83 Ohio App.3d 428 (1992) and *Swartz v. Swartz*, 110 Ohio App.3d 218 (1996).

{¶ 29} Appellee testified that she used the retirement funds to pay marital debts that accumulated while appellant was not working. Appellee did not provide an exact accounting of the money but did testify as to the payments generally. She testified that the value of the account was $33,142.69. The trial court determined appellee netted $26,514 after taxes. However, appellee also testified she paid a penalty in addition to the taxes. (Tr. Vol. II, 285.) Appellee stated she paid her mother $9,000, the mortgage payments for February and March 2013, car insurance for both cars, $5,000 toward the loan to Mr. Shapiro, $3,975 to her attorney, and $1,969 to Lowes. She also admitted she used some money as the down payment for her car.

{¶ 30} Although appellee admitted she did not inform appellant that she withdrew the funds, she did not violate a restraining order. She used the funds to pay debts. The trial court recognized that the parties had previously taken similar actions with other marital retirement accounts. The trial court awarded appellee any remaining monies in the account and awarded appellant his retirement account he may receive from his new place of employment. We cannot say the trial court abused its discretion in failing to find appellee engaged in financial misconduct and not awarding appellant a distributive award or a greater award of marital property. Appellant's fourth assignment of error is overruled.

{¶ 31} We find no abuse of discretion in the trial court's division of the parties' marital assets and liabilities. Accordingly, appellant's second, third, and fourth assignments of error are overruled.

## VI. FIFTH ASSIGNMENT OF ERROR–CHILD SUPPORT

{¶ 32} In his final assignment of error, appellant asserts four separate errors regarding the trial court's computation of child support and its completion of the child support worksheet. "A trial court generally has considerable discretion in the calculation of child support." *Boone v. Holmes*, 10th Dist. No. 14AP-449, 2015-Ohio-2242, ¶ 6. In the syllabus of *Marker v. Grimm*, 65 Ohio St.3d 139 (1992), the Supreme Court of Ohio held:

> 1. A child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215, must actually be completed and made a part of the trial court's record.

> 2. The terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects.

{¶ 33} Here, the trial court completed the child support worksheet but appellant contends the trial court erred in its method of doing so. R.C. 3119.02 provides that a trial court shall calculate the amount of child support in accordance with the applicable worksheet, as follows:

> In any action in which a court child support order is issued or modified, in any other proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order * * * the court * * * shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code.

{¶ 34} Appellant first contends that the trial court failed to accurately calculate the amount of health insurance to be paid. Neither party testified at trial regarding the cost of health insurance. Appellant cites appellee's Affidavit in Support of Temporary Orders dated April 4, 2013, for a calculation of appellee's health insurance. On this affidavit, appellee set forth her cost for an employee plus two dependents as $275.46, semi-monthly. The cost for coverage for an employee only is $67.50 semi-monthly. Thus, appellant subtracted the annual employee only cost from the annual employee plus two dependents for a total of $4,991 per year for the cost of health insurance for the minor children.

{¶ 35} However, the trial court used the figure on appellee's child support worksheet submitted with her Affidavit in Support of Temporary Orders dated April 4, 2013, which provides that the annual health insurance expense is $5,660 ($5,559.44 rounded). The trial court may take judicial notice of the case file and the affidavits submitted to prepare the final order. *Brubaker v. Ross*, 10th Dist. No. 00AP-1159, (Apr. 17, 2001) ("[A] court may only take judicial notice of the proceedings in the immediate case."). We cannot say the trial court abused its discretion in using the number submitted by appellee.

{¶ 36} Appellant's second and third allegations of error pertain to the trial court's determination of childcare expenses and failing to recognize appellant's payment of

childcare under the temporary order. Appellant argues that the court should recognize that a few weeks before the trial he paid $2,000 for B.H.'s childcare. While this is an undisputed fact, it is a payment pursuant to the temporary orders. In its final order, the trial court named appellee as the party responsible for childcare costs. The final order does not recognize any childcare payments made by either party under the temporary order, and is only concerned with future payments. Appellant's claim that the trial court failed to credit him for previous payments is irrelevant to the calculation of future expenses.

{¶ 37} Additionally, appellant argues that the trial court's determination of yearly childcare expenses is contrary to the evidence presented at trial. The trial court determined that B.H. requires childcare year-round. Appellee testified that the current daycare facility charges $50 per day or $250 per week for childcare. (Tr. Vol. I, 170.) The trial court used this figure and determined that B.H.'s yearly childcare cost would be $13,000. This amount, less the $1,200 federal childcare tax credit appellee can receive, equals the $11,800 total the trial court reached. Appellant argues that the figure is inappropriate because at the time of trial, B.H. only attended the daycare facility two days per week and was at a babysitter's house for three days per week. However, appellee testified that she intended to enroll B.H. at the current daycare facility five days a week upon B.H. turning three years old in September, and he would no longer go to the babysitter's home. There is evidence in the record for the total reached by the trial court. Accordingly, the trial court's determination was proper.

{¶ 38} Appellant's final alleged defect in the trial court's computation of the child support worksheet is that the trial court failed to include appellee's one-time bonus that she earned into its calculations of gross income. Each parent's gross income is one of the factors included on the child support worksheet. R.C. 3119.01(C)(7) defines "gross income" as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable." However, gross income "does not include any of the following: * * * (e) Nonrecurring or unsustainable income or cash flow items[.]" R.C. 3119.01(C)(7)(e). A "nonrecurring or unsustainable income or cash flow item" is "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01(C)(8).

{¶ 39} This court has held that a one-time nonrecurring income, such as a bonus, does not constitute "gross income" as required for calculations by R.C. 3119.01(C)(7). *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 12AP-1042, 2014-Ohio-1252, ¶ 29. Appellee testified at trial that the bonus she received was only for one year and did not reoccur. (Tr. Vol. I, 75.) Appellee stated that she received one bonus in the past three years but the company does not have a bonus system. (Tr. Vol. I, 75.) Thus, the one-time bonus was nonrecurring and unsustainable and the trial court did not err in excluding it from the child support worksheet. The trial court was well within its discretion to exclude appellee's one-time bonus in its calculations of child support. Appellant's arguments relating to the trial court's calculations of child support lack merit. Accordingly, appellant's fifth assignment of error is overruled.

## V. DISPOSITION

{¶ 40} For the foregoing reasons, appellant's five assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

BROWN and BRUNNER, JJ., concur.

————————————