[Cite as *In re L.F.*, 2023-Ohio-4199.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                      |   |                                              |
|----------------------|---|----------------------------------------------|
| IN RE: L.F.          | : | APPEAL NO. C-230270                          |
|                      |   | TRIAL NO. F17-1856X                          |
|                      | : |                                              |
|                      | : | *O P I N I O N.*                             |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed in Part and Appeal Dismissed in Part

Date of Judgment Entry on Appeal: November 22, 2023

*Law Offices of Nicholas A. Kulik, LLC,* and *Nicholas A. Kulik*, for Appellant Mother,

*Eric L. Anderson*, for Appellee Father.

**BERGERON, Judge.**

{¶1}    After six years of litigation, resulting in numerous changes in parenting time and custody, the juvenile court found plaintiff-appellant Mother in contempt and modified an existing custody agreement to transfer custody of seven-year-old L.F. from her to defendant-appellee Father.  Mother challenges the contempt order, faulting the juvenile court's legal analysis and lack of appropriate findings.  She also contests the change in custody, insisting that no change in circumstance occurred to justify the change, which she believes is not in the best interest of the child.  Because the contempt has been purged, we dismiss the part of her appeal relating to it.  And in light of the record, we overrule Mother's second assignment of error and affirm the juvenile court's judgment.

I.

{¶2}    Mother and Father are the unmarried parents of L.F., born in April 2016.  For a little more than the first year of the child's life, the parties lived together.  But their tumultuous relationship soon spawned a series of domestic violence allegations and recriminations.  Father initially obtained a protection order against Mother listing L.F. as a protected party in June 2017.  Beginning in June 2017, pursuant to the protection order and an agreed entry, Father enjoyed physical custody of L.F., and Mother had legal custody with supervised parenting time.  A few months later, Father filed a complaint for custody, describing Mother as unfit to parent L.F.

{¶3}    In June 2018, before resolution of the custody complaint, the protection order expired.  Father provided L.F. to Mother for her parenting time pursuant to the agreed entry, but Mother refused to return the child to his care at the conclusion of her parenting window, nor did she permit him any further contact with the child.  In

response, Father filed a motion for an interim parenting order. In July 2018, the court issued an interim visitation schedule, granting Father parenting time.

{¶4} The parties very briefly complied with the interim visitation schedule, but conflict brewed under the surface. Following Father's arrest in mid-August 2018 for transporting a firearm while under the influence of drugs, alcohol, or a combination of both in violation of R.C. 2923.16(D), Mother filed an emergency motion to modify the interim visitation schedule, emphasizing an imminent risk of harm to the child. Father ultimately pleaded to misdemeanor charges, and Mother denied him parenting time following the arrest.

{¶5} A few months later, Father filed a motion for contempt, citing Mother's failure to comply with the interim visitation order based on her denial of his parenting time. Ultimately, in September 2019, the court awarded Mother custody of L.F. while granting Father parenting time.

{¶6} As the case proceeded, Father filed a motion to modify visitation in October 2020, requesting the court allow the child overnight visits with Father on Sundays and permit Father's wife to assist with transportation. Shortly thereafter, in December 2020, he filed another motion for contempt, citing other examples of Mother denying him parenting time. In response, Mother requested a suspension of his parenting time in January 2021, alleging that he physically abused the child. She reported the alleged abuse to the Warren County Department of Job and Family Services ("WCJFS"), but it closed the investigation after failing to notice any marks or bruises on the child.

{¶7} In response to Mother's allegations, the court ordered Father's visitation sessions to occur at the Family Visitation Center. But following positive

reports from the center, the court amended his visitation schedule to allow for visits at his home in late February 2021.

{¶8} The next step in the custody volley occurred in May 2021, when Father filed another motion for custody, alleging Mother failed to address the child's developmental delays, alienated the child from him, and falsely reported abuse to WCJFS. In conjunction with this filing, he applied for child support services. Around the same time, Mother advised the child's therapist that he had hit the child. When the therapist asked the child if she had been hit by Father, she nodded yes. Because she is a mandated reporter, the therapist contacted the Hamilton County Department of Job and Family Services ("HCJFS") and relayed her concerns. As a result of the HCJFS investigation in June 2021, Father's visitation was again paused until the agency could complete its investigation. During the interlude, he filed a motion for a guardian ad litem ("GAL"), which the court granted.

{¶9} After HCJFS wrapped up its inquiry without finding substantiation of the allegations of abuse, counsel indicated they would work with their clients to develop a visitation schedule that would be reviewed by the GAL. But the anticipated cooperation failed to materialize. In February 2022, Father filed another contempt of visitation motion against Mother, alleging a long-standing pattern of denial of his parenting time. Nevertheless, later that month, the parties agreed to a new interim visitation schedule for L.F. and Father.

{¶10} As the GAL's investigation unfolded, she expressed concerns about parental alienation and Mother's lack of communication with Father, but ultimately, she recommended L.F. remain in Mother's custody with liberal visitation with Father. After later speaking with L.F.'s former babysitter (who validated the GAL's concerns

4

about parental alienation), the GAL submitted an addendum, modifying her recommendations and suggesting that Father have custody of L.F. with liberal visitation by Mother.

**{¶11}** With this swirling backdrop, the trial finally began in April 2022 but did not conclude until August 2022. In September 2022, the magistrate found Mother in contempt of the court's visitation order, granting Father's December 2020 motion for contempt (while denying his February 2022 motion as duplicative), but simultaneously holding that the contempt finding was purged. The magistrate also granted custody of L.F. to Father, finding a change in circumstances and L.F.'s best interest supported that conclusion. Mother quickly lodged objections to the decision of the magistrate, but the juvenile court denied her objections and approved and adopted the September 2022 decision of the magistrate, as supplemented by the juvenile court. Mother now appeals.

II.

**{¶12}** As an initial matter, we must highlight an impediment to our review of this case. Both Mother's and Father's appellate briefs fail to substantially comply with the requirements of the Ohio Rules of Appellate Procedure and the Local Rules of the First District Court of Appeals. Pursuant to App.R. 16(A)(6) and (7) and 1st Dist. Loc.R. 16.1(A)(3) and (4), the appellant must include in his or her brief a statement of facts with appropriate references to the record and an argument also containing references to the relevant parts of the record. App.R. 16(B) and 1st Dist. Loc.R. 16.1(B) impose the same requirements for appellees.

**{¶13}** These rules are not designed to make life difficult for appealing parties, but rather to ensure that we, as appellate court judges, can do our jobs and to enable

5

the parties to put their best foot forward. Without record citations, we are a ship adrift at sea. " 'It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error.' " *Fontain v. Sandhu*, 1st Dist. Hamilton No. C-200011, 2021-Ohio-2750, ¶ 18, quoting *State v. Watson*, 126 Ohio App.3d 316, 321, 710 N.E.2d 340 (12th Dist.1998). For that reason, Ohio courts recognize that compliance with these rules "is mandatory, and a court 'may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based.' " *City of Columbus v. Payne*, 10th Dist. Franklin No. 22AP-766, 2023-Ohio-2461, ¶ 5, quoting App.R. 12(A)(2).

{¶14} Here, Mother failed to cite to the record throughout both the statement of facts and the entire argument section of her brief. And particularly in cases such as this, where a party challenges a court's decision as unsupported by the evidence offered at trial, it is crucial that she provides the appellate court with references to where in the record the trial court went astray. While Mother's failure to comply with this bedrock principle of the governing appellate rules justifies denial of relief, we will nonetheless address the merits of her assignments of error below given the significance of the impact of this case on L.F., a non-party to this appeal.

III.

{¶15} In her first assignment of error, Mother contends that the juvenile court abused its discretion by finding her in contempt for denying Father parenting time with L.F. But our review of the record indicates that the contempt order has been purged. The juvenile court granted Father's motion to find Mother in contempt for denying parenting time. In the same order, however, the court deemed the contempt

finding purged by virtue of the custody order granting Father custody of L.F. and Mother liberal visitation. Nor did the court impose any penalties for contempt.

{¶16} Generally, " 'when a defendant has made payment or otherwise purged the contempt,' " the appeal of a contempt charge is moot. *Hadinger v. Hadinger*, 10th Dist. Franklin No. 15AP-09, 2016-Ohio-821, ¶ 9, quoting *Farley v. Farley*, 10th Dist. Franklin No. 02AP-1046, 2003-Ohio-3185, ¶ 62. It is unusual, to be sure, that a court would simultaneously find contempt and deem it purged, but that circumstance doesn't detract from the fact that the contempt order has been purged. And when a contempt appeal is moot, "the appeal challenging the contempt finding should be dismissed." *Hammond v. Hammond*, 1st Dist. Hamilton No. C-190376, 2020-Ohio-3443, ¶ 7, citing *Darr v. Livingston*, 2017-Ohio-841, 85 N.E.3d 1260, ¶ 15, 18 (10th Dist.).

{¶17} Because the contempt order has been purged, and there is no controversy remaining for this court to decide, the matter is now moot. Therefore, we find Mother's first assignment of error moot and dismiss this portion of her appeal.

IV.

{¶18} In her second assignment of error, Mother insists that the juvenile court erred and abused its discretion when it granted Father's motion for custody because he failed to demonstrate that a change in circumstances occurred since the previous order of custody, and the change in custody ran contrary to the best interest of the child.

{¶19} Pursuant to R.C. 3109.04(E)(1)(a), before a trial court may "modify[] a prior decree allocating parental rights and responsibilities, [it] must find that a change has occurred in the circumstances of the child or the child's residential parent" since

7

the last custody decree. *Massong v. Tyner*, 1st Dist. Hamilton No. C-210549, 2022-Ohio-2933, ¶ 10. "[T]he changed conditions 'must be substantiated, continuing, and have a materially adverse effect upon the child.' " *In re E.R.*, 1st Dist. Hamilton No. C-180615, 2019-Ohio-4491, ¶ 6, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997).

{¶20} Contested child custody cases are particularly rife with accusations and factual discrepancies (much like the record chronicled above), and trial courts are often best positioned to sort out the crucial credibility issues in these disputes. Thus, this court reviews a juvenile court's determination of a change in circumstances " 'for an abuse of discretion because "a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." ' " *Massong* at ¶ 12, quoting *Souders v. Souders*, 1st Dist. Hamilton No. C-210469, 2022-Ohio-1953, ¶ 8, quoting *Davis* at 416. An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶21} Mother contends that her dislike for Father, her restriction of his parenting time, and her lack of communication with Father do not rise to the level of changed circumstances warranting a modification in custody. And she further maintains that the court's rationale for finding a change in circumstances was unsupported by the evidence and testimony proffered at trial. Yet Mother fails to identify any places in the record where this court may locate any countervailing evidence.

**{¶22}** Here, the juvenile court identified the change in circumstances as the adverse impact on the child occasioned by Mother's growing hostility towards Father.[1] "Increased hostility between the parents and the frustration of visitation are factors which can support a finding of a change in circumstances." *In re Nentwick*, 7th Dist. Columbiana No. 00CO50, 2002-Ohio-1560, ¶ 39, citing *Davis*, 77 Ohio St.3d at 416-417, 674 N.E.2d 1159.

**{¶23}** The court specifically noted that "[t]he record shows that L.F. sensed Mother's negative feelings toward Father and felt that she could not express positive things about him without losing Mother's love." Based on our review of the record, it demonstrates that L.F.—at least intermittently—adopted Mother's feelings about Father as her own. L.F. expressed to the GAL that she did not care if she visited Father, and during one visit with Father, L.F. even stated "mommy doesn't like you, and so I don't like you." On this record, we see sufficient support for the determination that there was a change in circumstances. And Mother failed to identify any evidence in the record indicating that the juvenile court abused its broad discretion when determining these concerns could impact L.F.'s emotional development. "[I]t is the appellant's burden to affirmatively demonstrate error on appeal." *Fontain*, 1st Dist. Hamilton No. C-200011, 2021-Ohio-2750, at ¶ 18.

**{¶24}** Mother also disagrees with the court's determination that the requested custody modification is necessary to further the best interest of the child. After the juvenile court determines there is a change in circumstances, it "must determine

---

[1] Both parties frame this issue in the context of *Fisse v. Fisse*, 1st Dist. Hamilton No. C-160535, 2017 Ohio App. LEXIS 3134 (July 28, 2017), which evaluates whether acrimony between parents can rise to the level of a change in circumstances. But *Fisse* is a judgment entry and has "no precedential value and therefore should not have been cited." *Sherill v. Proscan*, 1st Dist. Hamilton No. C-070765, 2008-Ohio-2468, ¶ 6.

whether a modification is in the best interest of the child[].” *Bohannon v. Lewis*, 1st Dist. Hamilton Nos. C-210316 and C-210332, 2022-Ohio-2398, ¶ 20. When determining what is in a child's best interest, " 'the court shall consider all relevant factors, including, but not limited to' " those specified in R.C. 3109.04(F)(1). *Id.*, quoting R.C. 3109.04(F)(1).

{¶25} Mother contends that mere speculation as to future harm the child may suffer cannot suffice to demonstrate the change in custody is necessary to serve the best interest of the child. But Mother misconstrues the best interest analysis. The court appropriately considered the negative impact of the hostility between the parents in its preceding change in circumstances analysis. In its best interest analysis, the court set forth findings regarding all of the applicable best interest factors listed in R.C. 3109.04(F)(1). The best interest analysis does not require courts to find active harm to the child in order to determine a custody modification is in the best interest of the child.

{¶26} Mother further insists that the significant change in the child's life and routine will harm the child. But the juvenile court analyzed each R.C. 3109.04(F)(1) factor and weighed the advantages of the change in environment to L.F. against the harm likely caused by the change, ultimately determining that the custody modification would further L.F.'s best interest. The juvenile court found L.F. had a positive relationship with both parents and was well-adjusted to both homes and their surrounding communities, but it determined that given each parent's history with facilitating parenting time, Father would be more likely to honor and comply with parenting time obligations. The record supports these findings.

**{¶27}** The juvenile court did not abuse its discretion in finding the events described above amounted to a change in circumstances or in finding that a modification in custody would further the best interest of L.F. In light of the foregoing analysis, we overrule Mother's second assignment of error.

\* \* \*

**{¶28}** We dismiss the part of Mother's appeal relating to the contempt finding and overrule the second assignment of error. We accordingly affirm the judgment of the trial court.

Judgment affirmed in part and appeal dismissed in part.

**CROUSE, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.